UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-22621-CIV-MORENO

MARIO ECHEVARRIA, individually and on
behalf of all others similarly situated,

        Plaintiff,

vs.

EXPEDIA, INC., HOTELS.COM L.P.,
HOTELS.COM GP, LLC, ORBITZ, LLC,
BOOKING.COM B.V., and BOOKING
HOLDINGS INC.,

        Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE came before the Court upon Defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, LLC, and Orbitz, LLC's Amended Motion to Dismiss Plaintiff's Third Amended Complaint and Defendants Booking.com B.V. and Booking Holdings Inc.'s Motion to Dismiss Third Amended Class Action Complaint (**D.E. 113 and 114**), both filed on **May 11, 2023**.

THE COURT has considered the Motions, the Plaintiff's response in opposition, the Defendants' replies, the pertinent portions of the record and, being otherwise fully advised in the premises, it is **ADJUDGED** that, for the reasons explained below, the Motions are **DENIED**.

## BACKGROUND

Plaintiff Mario Echevarría filed this class action[1] against Defendants Expedia Group, Inc.,

---

[1] In addition to bringing an individual claim, Plaintiff seeks to bring a class action on behalf of "all U.S. nationals . . . who own an interest in property . . . located in Cuba that was expropriated by the government of Cuba prior to March 12, 1996, and has been trafficked by an agency or instrumentality of Cuba together with Iberostar and the Expedia or Booking Defendants . . . ." ECF No. 77 at ¶ 84.

Hotels.com L.P., Hotels.com GP, LLC, Orbitz, LLC, Booking.com B.V., and Booking Holdings Inc. pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act (the "Helms-Burton Act" or the "Act"). The Helms-Burton Act provides U.S. nationals who hold a claim to property that was confiscated by the communist Cuban government with a private cause of action against persons who have "trafficked" in such property. 22 U.S.C. § 6082(a).

Plaintiff is a United States national who alleges that he has a legitimate interest and claim to Cayo Coco, an island off the North Coast of Cuba, near the city of Morón (the "Cuevas Property" or the "Property"). According to the Third Amended Complaint (the "Amended Complaint"), Plaintiff's great-grandparents inherited the undeveloped land from Plaintiff's great-great-grandfather, and then, through a long, detailed line of succession, partial ownership of the land eventually passed to Plaintiff following the death of his mother in 1993. The Cuevas Property was confiscated by the Cuban government on August 16, 1960, whereupon the Cuban government developed the island and, together with various hotel chains, built a number of resorts on the Cuevas Property. Among those resorts are the Iberostar Mojito and the Iberostar Colonial (the "Trafficked Hotels").

The Defendants operate travel booking websites through which they offer and sell reservations at the Trafficked Hotels. In doing so, Defendants generate revenue when website users book reservations at hotels listed on Defendants' websites. Within the two years prior to the filing of this action, Defendants marketed and sold online reservations for the Trafficked Hotels in Cuba. On this basis, Plaintiff alleges that the Defendants have "knowingly and intentionally used . . . the confiscated properties by soliciting and selling, for economic benefit, reservations at the Trafficked Hotels and hotels on Class Members' property . . . without the authorization of any United States national who holds a claim to the property." *Id.* at ¶¶ 110, 111. And Plaintiff further

claims that Defendants' knowing and intentional conduct relating to the Cuevas Property constitutes "trafficking" as defined in 22 U.S.C. § 6023(13)(A); thus, Defendants are liable to Plaintiff and the Class Members for all money damages allowed by statute. *Id.* at ¶¶ 110-13.

Defendants, however, move to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), advancing three primary arguments in support thereof. First, Defendants argue that Plaintiff has failed to plead a claim entitling him to relief because Plaintiff fails to plausibly allege that he acquired his claim to the Cuevas Property before March 12, 1996, which is a threshold requirement to sustain a cause of action under the Act. Second, Defendants contend that Plaintiff's Amended Complaint must be dismissed because Plaintiff fails to allege sufficient facts to allow a reasonable inference that Defendant "knowingly and intentionally" trafficked in the confiscated property. Finally, Defendants aver that Plaintiff fails to plead a claim for violation of the Act because Plaintiff fails to allege that Defendants' use of the Cuevas Property was *not* incident to lawful travel in Cuba. The Court will address each argument in turn.

## **LEGAL STANDARD**

A court may grant a motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

A court ruling on a motion to dismiss must accept the well-pled factual allegations as true and view the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). But the court need not accept as true allegations upon information and belief that lack sufficient facts to make the allegations plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551, 557); *see also In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true."). The court also need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019). "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (quotation marks omitted).

## DISCUSSION

### I. Plaintiff Adequately Pleads Ownership of a Claim to the Cuevas Property

Defendants first argue that Plaintiff's Helms-Burton Act claim fails because Plaintiff has not plausibly alleged that he acquired ownership of his claim prior to the statutory cutoff date of March 12, 1996. More specifically, they contend that the Amended Complaint lacks sufficient factual allegations from which one could draw a reasonable inference that Plaintiff inherited and now owns a claim to the Cuevas Property, and that Plaintiff's allegations purporting to establish that he is the rightful owner of a claim to the Cuevas Property are conclusory.

4

Under the Helms-Burton Act, any person who "traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property . . . ." 22 U.S.C. § 6082(a)(1)(A). "In the case of property confiscated before March 12, 1996," however, "a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." Id. § 6082(a)(4)(B). Thus, to maintain his cause of action under Title III of the Act, Plaintiff must plausibly allege that he (1) owns a claim to property that was confiscated by the Cuban government on or after January 1, 1959; (2) that he acquired his claim to the confiscated property before March 12, 1996; and (3) that Defendants trafficked in the confiscated property.

As an initial matter, Plaintiff alleges a detailed line of succession to allow a reasonable inference that he owns a claim to the Cuevas Property and that he acquired the claim upon his mother's death in 1993. To be sure, Plaintiff alleges the following facts:

- The Cuevas Property was initially "inherited by Julián Cuevas and his wife, Isabel Angulo, from Isabel's father . . . ." ECF No. 77 at ¶ 39.

- Thereafter, "when Isabel Angulo and Julián Cuevas died in Cuba in 1885 and 1930, respectively, Julián Cuevas did not re-marry after his wife's death[,] and their 100% ownership interest in the Cuevas property was distributed by will to their five surviving children, Emilio Cuevas, Julio Cuevas, Maria Teresa Cuevas, Carmen Cuevas, and Elvira Cuevas." Id. at ¶ 40.

- The first of the five surviving children, Emilio Cuevas, "died in 1934 in Cuba intestate, and his interest in the Cuevas Property passed to his surviving children." Id. at ¶ 41.

- Then, the second and third of the five originally surviving children, Julio Cuevas and Maria Teresa Cuevas, "died in Cuba intestate, unmarried and childless in 1936 and 1956, respectively. When Julio Cuevas died in 1936, his interest in the Cuevas Property "passed to his surviving siblings, Maria Teresa Cuevas, Elvira Cuevas, and Carmen Cuevas, and to Emilio Cuevas' children, by operation of law." Id. at ¶ 42. And when Maria Teresa Cuevas died in 1956, her "interest [ ] in the Cuevas Property passed to her surviving siblings, Elvira Cuevas and Carmen Cuevas, and to Emilio Cuevas' children, by operation of law." Id.

- Three years later, the fourth of the five originally surviving children, "Elvira Cuevas[,] died in 1959 in Cuba intestate. She was predeceased by her husband Aureliano Echevarría, did not re-marry and was survived by two children, Rosa Elvira Echevarría and Julián Echevarría, who inherited her interest in the Cuevas Property by operation of law." *Id.* at ¶ 43.

- The last of the five originally surviving children, "Carmen Cuevas[,] died in Cuba intestate, unmarried and childless on or about 1962." *Id.* at ¶ 44. And because she died unmarried and childless, "[h]er interest in the Cuevas Property passed to the children of Elvira Cuevas and Emilio Cuevas by operation of law." *Id.*

- Elvira Cuevas' daughter, "Rosa Elvira Echevarría[,] died in 1986 in Miami intestate. She was predeceased by her husband, did not re-marry and died childless. Her interest in the Cuevas Property passed to her surviving siblings, Julián Echevarría, by operation of law." *Id.* at ¶ 45.

- Finally, "Julián Echevarría died in 1987 in Miami intestate. Upon his death, his interest in the Cuevas Property passed by operation of law to his wife, Cira Marquez, who died in *1993* in Miami intestate. Marquez did not remarry and, upon her death, ***her interest in the Cuevas Property was inherited by their three surviving children, including plaintiff Mario Echevarría, by operation of law.***" *Id.* at ¶ 46 (emphasis added).

Defendants argue that these allegations fail to plausibly show that Plaintiff inherited an actionable ownership interest in the Cuevas Property before the March 12, 1996 statutory cutoff date. The Court respectfully disagrees. Taking the above facts as true, which this Court must on a motion to dismiss, Plaintiff meets his burden of pleading enough factual allegations to permit the reasonable inference that he acquired ownership of an actionable interest in the Cuevas Property when his mother died in 1993. *See Sallah ex rel. MRT LLC v. Worldwide Clearing LLC*, 860 F. Supp. 2d 1329, 1333 (S.D. Fla. 2011) ("When considering a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff.").

## II. Plaintiff Adequately Pleads Trafficking Under the Act

### a. Scienter: "Knowing and Intentionally"

Defendants argue next that the Amended Complaint lacks sufficient non-conclusory, factual allegations to permit a reasonable inference that Defendants knowingly and intentionally trafficked in the confiscated property. Under the Act, "a person 'traffics' in confiscated property if that person knowingly and intentionally . . . engages in a commercial activity using or otherwise benefiting from confiscated property." 22 U.S.C. § 6023(13).

As initial matter, Plaintiff sufficiently pleads that Defendants "engage[d] in a commercial activity using or otherwise benefiting from confiscated property" because Plaintiff alleges that "[i]n addition to directly benefitting from the Cuevas Property by receiving commissions or other fees for booking rooms at the Trafficked Hotels, the . . . defendants also derive an indirect benefit from the Trafficked Hotels by receiving advertising revenues driven by or related to their offering and selling reservations at the Trafficked Hotels." ECF No. 77 at ¶¶ 62, 73. And Plaintiff further alleges that "[t]he defendants have knowingly and intentionally used or benefitted, directly or indirectly, from the confiscated properties by soliciting and selling, for economic benefit, reservations at the Trafficked Hotels . . . which constitutes trafficking that violates Title III of the Libertad Act." *Id.* at ¶ 110.

A closer question, however, is whether Plaintiff sufficiently alleges that Defendants' conduct was "knowing and intentional." Defendants are correct that many of the Plaintiff's allegations regarding scienter are insufficiently conclusory. *See, e.g., id.* at ¶¶ 66, 67 ("[T]he Booking Defendants knowingly and intentionally participated in trafficking the Cuevas Property . . . ," and "[t]he Booking Defendants' knowing and intentional conduct regarding the Cuevas Property is trafficking defined in 22 U.S.C. 6023(13)(A)"). That said, Plaintiff also alleges that,

7

"on August 7, 2019, [Plaintiff] informed defendants of his intent to commence an action unless defendants ceased to traffic in the Cuevas Property," and "despite being on actual notice, defendants continued to market and make reservations at the Trafficked Hotels for their economic benefit." *Id.* at ¶¶ 51, 52. Accepting these facts as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the Amended Complaint sufficiently sets forth Defendants' scienter, at least for the post-notice period because "trafficking in confiscated property after receiving notice from the plaintiff is enough to establish scienter." *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1157 (S.D. Fla. 2022); *see also de Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2021 WL 3173213, at *8 (S.D. Fla. Jul. 27, 2021) (denying motion to dismiss and finding plaintiff "sufficiently set forth [d]efendant's scienter, at the very least for the post-notice period" where plaintiff "allege[d] that "[d]efendant continued to traffic in the Confiscated Property [ ] after it received Plaintiff's pre-suit notice letter . . ."; *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 332 (D. Del. 2021) (finding that plaintiff plausibly alleged scienter against defendants who continued to traffic in the subject property more than thirty days after receiving plaintiff's pre-suit notice of claim).

   **b. Statutory Exception: the "Lawful Travel Exception"**

Under the Act, there are four categories of conduct that do ***not*** constitute trafficking. 22 U.S.C. § 6023(13)(B). One of these categories are "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." *Id.* § 6023(13)(B)(iii) (the "Lawful Travel Exception"). Defendants argue that because the Lawful Travel Exception is part of the definition of "traffics," and trafficking is an essential element of a Title III claim, Plaintiff must allege that Defendants' actions fall outside the Lawful Travel Exception to state a valid claim. On this basis, Defendants demand dismissal

of the Amended Complaint because Plaintiff fails to allege a negative—that the Lawful Travel Exception does *not* apply, i.e., that Defendants' online booking of room reservations at the Trafficked Hotels was not "incident to lawful travel" and "not necessary to the conduct of such travel." In response, Plaintiff contends that the Lawful Travel Exception is an affirmative defense to liability under the Act, and thus it need not be refuted or negated in the Amended Complaint to state a valid claim.

The Court rejects Defendants' argument that the Amended Complaint should be dismissed because Plaintiff failed to plead around the Lawful Travel Exception. While Defendants "acknowledge" that "some judges" have held the Lawful Travel Exception to be an affirmative defense (ECF No. 114 at 12 n.8), Defendants fail to identify a single case in a which any court has held otherwise. This is unsurprising as it appears that every court in this district that has addressed this issue has uniformly held that the Lawful Travel Exception is an affirmative defense which Defendants must plead and prove. *See, e.g., Regueiro v. Am. Airlines, Inc.*, No. 19-cv-23965-JEM, 2022 WL 2399748, at *10 (S.D. Fla. May 20, 2022) ("The lawful travel exception is an *affirmative defense* that [d]efendant bears the burden of proving.") (emphasis added); *de Fernandez v. Crowley Holdings, Inc.*, 593 F. Supp. 3d 1162, 1171 (S.D. Fla. 2022) ("Defendants argue that Plaintiffs are required to plead around the lawful travel defense set forth in § 6023(13). The Court disagrees. . . . *the burden is on Defendants* to establish that their activity . . . was incident to lawful travel to Cuba.") (emphasis added); *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1286 (S.D. Fla. 2019) ("Based on the text and structure of Helms-Burton, the Court holds that the lawful travel exception is an *affirmative defense* to trafficking that must be established by [defendant], not negated by [p]laintiff.") (emphasis added); *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2019 WL 8895241, at *3 (S.D. Fla. Aug 28, 2019) ("Based on the

language of the Libertad Act, the Court agrees with the Plaintiff that the 'lawful travel exception' is an *affirmative defense* to trafficking . . . . Therefore, this exception must be established by Carnival and [p]laintiff was not required to negate this exception in its Complaint.") (emphasis added). Therefore, notwithstanding Defendants' "disagree[ment] with those rulings," the Court declines Defendants' invitation to depart from those uniform conclusions of law and hold otherwise. ECF No. 114 at 12 n.8.

## CONCLUSION

For the reasons explained above, it is

1. **ADJUDGED** that Defendants' Motions to Dismiss (**D.E. 113 and 114**) are **DENIED**.

2. It is further **ADJUDGED** that Defendants shall file and answer to Plaintiff's Complaint no later than **August 28, 2023**.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ of August 2023.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record