**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-cv-22621-FAM

MARIO ECHEVARRÍA,

v.

EXPEDIA GROUP, INC., HOTELS.COM
L.P., HOTELS.COM GP, ORBITZ, LLC,

     defendants.

_____/

**<u>PLAINTIFF'S MOTION FOR PARTIAL CLASS CERTIFICATION</u>**

### TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 3

III.  THE PROPOSED CLASS .................................................................................... 4

IV.   THE REPRESENTATIVE PLAINTIFF ............................................................ 5

V.    LEGAL STANDARD ........................................................................................... 6

VI.   ARGUMENT ......................................................................................................... 7

    A.    Partial Certification Under Fed. R. Civ. P. 23(c)(4) Should be Granted .................... 7

    B.    Echevarría's Proposed Class Satisfies Fed. R. Civ. P. 23(a) ............................. 9

       1.   Numerosity Exists ..................................................................................... 11

       2.   Commonality Exists ................................................................................. 12

         a. The Legal Framework for Plaintiffs' Claims ................................. 12

         b. Common Factual and Legal Questions ......................................... 12

       3.   Typicality Exists ....................................................................................... 13

       4.   Adequacy of Representation Exists ........................................................ 14

    C.    Echevarría's Proposed Issues Class Satisfies Fed. R. Civ. P.  23(b)(3) .................... 14

       1.   Predominance ............................................................................................ 15

       2.   Superiority ................................................................................................. 16

VII.  ECHEVARRÍA'S PROPOSED TRIAL PLAN ................................................ 18

    A.    Phase One ............................................................................................................ 18

    B.    Phase Two ........................................................................................................... 18

VIII. PROPOSED CLASS NOTICE AND NOTICE PLAN ................................... 19

IX.   PROPOSED PUBLICATION NOTICE PLAN ............................................... 19

    A.    Diario Las Américas Digital ............................................................................. 19

       1.   Banner Ads ................................................................................................ 20

       2.   Newsletter ................................................................................................. 20

    B.    Facebook Ads ...................................................................................................... 20

X.    CONCLUSION .................................................................................................... 21

ii

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974) .......................................................................................... 10

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................ 6

*Armstrong v. Martin Marietta Corp.*,
  138 F.3d 1374 (11th Cir. 1998) ......................................................................... 10

*Belin v. Health Ins. Innovations, Inc.*,
  337 F.R.D. 544 (S.D. Fla. 2021) ......................................................................... 6

*Bell v. WestRock CP, LLC*,
  2019 WL 1874694 (E.D. Va. 2019) ..................................................................... 9

*Black v. Occidental Petroleum Corp.*,
  69 F.4th 1161 (10th Cir. 2023) ......................................................................... 16

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
  562 F. App'x 782 (11th Cir. 2014) ...................................................................... 9

*Butler v. Sears, Roebuck and Co.*,
  727 F.3d 796 (7th Cir. 2013) ........................................................................... 3, 8

*Cardenas v. Toyota Motor Corp.*,
  2021 WL 5811741 (S.D. Fla. 2021) ..................................................................... 6

*Charron v. Pinnacle Group N.Y., LLC*,
  269 F.R.D. 221 (S.D.N.Y. 2010) ......................................................................... 5

*Cherry v. Dometic Corp.*,
  986 F.3d 1296 (11th Cir. 2021) ........................................................................... 9

*Cox v. Am. Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986) ......................................................................... 11

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983).......................................................................................... 10

*Del Valle v. Trivago GMBH*,
  56 F.4th 1265 (11th Cir. 2022) ....................................................................... 6, 9

*Diakos v. HSS Sys., LLC*,
    137 F. Supp. 1300 (S.D. Fla. 2015) ................................................................. 14

*Garcia-Bengochea v. Carnival Corp.*,
    57 F.4th 916 (11th Cir. 2023) ...................................................................... 1

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) .................................................................................... 4

*Hall v. Marriott Int'l, Inc.*,
    344 F.R.D. 247 (S.D. Cal. 2023) ................................................................. 7

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ...................................................................... 14

*Harris v. Medical Transp. Mgmt., Inc.*,
    2021 WL 3472381 (D.D.C. 2021) ............................................................... 16

*Herbst v. Able*,
    47 F.R.D. 11 (S.D.N.Y. 1969) .................................................................... 9

*In re Equifax Inc. v. Customer Data Security Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ................................................................. 14

*In re Facebook Biometric Info. Privacy Litig.*,
    2018 WL 2412176  (N.D. Cal. 2018) .......................................................... 20

*In re Facebook, Inc., PPC Advert. Litig.*,
    282 F.R.D. 446 (N.D. Cal. 2012) ............................................................... 11

*In re Marriott Int'l, Inc.*,
    341 F.R.D. 128 (D. Md. 2022) ................................................................... 17

*In re Motor Fuel Temperature Sales Practices Litig.*,
    292 F.R.D. 652 (D. Kan. 2013) .......................................................... 7, 15, 16

*In re Nassau Cnty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006) ................................................................. 15, 16

*In re U. S. Fin. Sec. Litig.*,
    69 F.R.D. 24 (S.D. Cal. 1975) ................................................................... 10

*Israel v. Avis Rent–A–Car Sys., Inc.*,
    185 F.R.D. 372 (S.D. Fla. 1999) ................................................................ 11

*Leib v. Rex Energy Operating Corp.*,
  2008 WL 5377792 (S.D. Ill. 2008) ................................................................. 5

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014) ........................................................... passim

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
  289 F.R.D. 674 (S.D. Fla. 2013) ................................................................. 11

*Mark v. Gawker Media LLC*,
  2014 WL 5557489 (S.D.N.Y. 2014) ............................................................ 20

*Martin v. Behr Dayton Thermal Products, LLC*,
  896 F.3d 405 (6th Cir. 2018) ........................................................... 15, 16, 17

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  672 F.3d 482 (7th Cir. 2012) ................................................................... 2, 8

*Sanft v. Winnebago Indus., Inc.*,
  214 F.R.D. 514 (N.D. Iowa 2003) ............................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 359 (2011) ........................................................................ 12, 13

*Williams v. Mohawk Indus.*,
  568 F.3d 1350 (11th Cir. 2009) ................................................................ 12

*Woods v. Vector Mktg Corp.*,
  2015 WL 1198593 (N.D. Cal. 2015) ............................................................ 20

### *Statutes*

22 U.S.C. § 1643 ................................................................................................. 5
22 U.S.C. § 6021 ................................................................................................. 1
22 U.S.C. § 6021(2) ........................................................................................... 1
22 U.S.C. § 6021(4) ........................................................................................... 1
22 U.S.C. § 6021(15) ......................................................................................... 1
22 U.S.C. § 6023(13)(A) .................................................................................. 12
22 U.S.C. § 6023(15) ......................................................................................... 4
22 U.S.C. § 6081(2) ........................................................................................... 6
22 U.S.C. § 6081(3) ....................................................................................... 6, 11
22 U.S.C. § 6081(5) ........................................................................................... 6

22 U.S.C. § 6081(6) ............................................................................................... 6

22 U.S.C. § 6081(7) ............................................................................................... 6

22 U.S.C. § 6081(11) ............................................................................................. 1

22 U.S.C. § 6082(a) ............................................................................................... 6

22 U.S.C. § 6082(a)(1)(A) ................................................................................. 2, 12

22 U.S.C. § 6082(a)(1)(A)(i)(III) ........................................................................... 5

22 U.S.C. § 6082(a)(1)(A)(iii) ............................................................................... 2

22 U.S.C. §§ 6081-6085 ........................................................................................ 1

**Other Authorities**

*1 McLaughlin on Class Actions* § 4:43 (11th ed.) ................................................ 7

*2 Newberg and Rubenstein on Class Actions* § 4:90 (6th ed.).............................. 17

*Diario Las Américas Weekly Print Edition*,

    https://www.diariolasamericas.com/diario-las-americas-weekly-printed-edition-n4240224

    (last visited Mar. 14, 2024) .......................................................................... 20

Jeanne Batalova, *Cuban Immigrants in the United States*,

    Migration Policy Institute (June 11, 2020) ..................................................... 4

*McLaughlin on Class Actions* § 5:81 (15th ed. 2018) .............................................. 20

**Rules**

Fed. R. Civ. P. 23(a)(4)......................................................................................... 14

Fed. R. Civ. P. 23(c)(4).................................................................................. passim

## I.     INTRODUCTION

Mario Echevarría moves for partial class certification of core liability issues, including trafficking, which are fundamental to his claim and the claims of all putative Class Members.[1] Those issues can, will, and should be proven once, class wide, by proof common to all Class Members' claims.

Echevarría and the Class Members are similarly situated U.S. nationals who own claims to real property confiscated by Fidel Castro's communist regime after it seized power in 1959. After Castro seized power, his regime "ban[ned] [ ] free and fair democratic elections," perpetrated "violations of fundamental human rights," and continually oppressed the Cuban people, beginning with confiscation of their real property. 22 U.S.C. §§ 6021(2), (4), (15). Decades later, Echevarría's and Class Members' confiscated properties ("the Properties") were exploited and developed into tourist resorts operated by Iberostar. During the limitations period, Defendants trafficked the Properties by offering and selling room reservations at these resorts, to tourists and other visitors to Cuba, through online booking providers and defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, LLC, and Orbitz, LLC (collectively "Expedia").

On March 12, 1996, Congress passed the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, et seq. (the "Act"). Title III of the Act (22 U.S.C. §§ 6081-6085), created a private cause of action against traffickers of property confiscated by the Castro regime. This class action is consistent with the Act's "twin purposes of compensation and deterrence." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 938 (11th Cir. 2023) (Jordan, J., concurring). Title III ensures that "victims of [the Cuban government's] confiscations . . . [are] endowed with a judicial remedy in the courts of the United States," to deny "traffickers [of confiscated property] any profits from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11). Title III provides that "any person that . . . traffics in property which was

---

[1] These core liability issues are: (1) whether all privately owned real property in Cuba on which were built hotels operated by Iberostar (the "Trafficked Hotels"), was confiscated before March 12, 1996; (2) whether Defendants benefitted from the commercial use of the Trafficked Hotels; (3) whether Defendants' trafficking was knowing and intentional; (4) whether Defendants obtained authorization from Plaintiff and Class Members to sell reservations at the Trafficked Hotels; and (5) whether Defendants compensated Plaintiff and the Class Members for Defendants' sale of reservations at the Trafficked Hotels.

confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property." 22 U.S.C. § 6082(a)(1)(A).

This Title III class action will further the Act's "twin purposes of compensation and deterrence" by consolidating claims involving overarching common issues that can be proven class-wide, thereby giving access to the courthouse to many victims who otherwise would have none. Group litigation is necessitated by the cost and complexity of Title III claims under the Act, which presents numerous issues of first impression, and would deter individual plaintiffs from seeking redress for Expedia's (and others') trafficking of confiscated property. Individual actions are impractical because of the significant costs required to prove Expedia's trafficking in multiple trials. Title III (at 22 U.S.C. § 6082(a)(1)(A)(iii)), provides that a plaintiff may recover the current value of confiscated property, but this case demonstrates that each Class Member would have to litigate for years, at great expense, to do so. Consequently, this class action is the best way, and may be the only way, for Class Members to recover for Expedia's trafficking.

The overarching common issue in this case is Defendants' trafficking of the confiscated Properties, and it easily can be proven class wide by applying Title III's plain language to undisputed facts. This overarching issue and the other core liability issues listed *supra* in note 1, should be certified for class treatment, and partial certification of an "issues class" under Fed. R. Civ. P. 23(c)(4) should be granted. This will be the only practical way for Class Members to pursue compensation for the trafficking of their confiscated Properties by parties whose conduct props up the Cuban regime.

It is well settled that the Court may certify "particular issues" for class treatment, pursuant to Fed. R. Civ. P. 23(c)(4). *See, e.g.*, *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (Where a class could not be certified for all purposes, the district court certified a Rule 23(c)(4) class to determine liability issues for breach of warranty, and for claims under California's consumer, false advertising, and unfair competition statutes.); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (reversing denial of Rule 23(c)(4) certification and applying it to determine "on a class-wide basis" a "pair of issues" regarding an employer's practices, even if that would necessitate "hundreds of separate trials . . . to determine which class members were actually adversely affected by one or both of the practices and if so what loss [was] sustained").

2

"[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members . . . is permitted by Rule 23(c)(4) and will often be the sensible way to proceed." *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013). Expedia's trafficking of confiscated property is the overarching liability issue common to the claims of Echevarría and all Class Members. It predominates over any purported individualized issues regarding Defendants' trafficking, and deciding it once (along with the other core liability issues)[2], will further the goals of Rule 23 and the Act, while conserving judicial and party resources.

## II.    FACTUAL BACKGROUND

For decades before 1959, the Cuevas family[3] owned Cayo Coco island (the "Cayo Coco Property"), which lies off Cuba's north shore. On January 1, 1959, Fidel Castro seized power in Cuba and instituted a communist regime. Shortly thereafter, in the 1960s, the Castro regime confiscated the Cayo Coco Property, in the course of confiscating all privately owned real property in Cuba. The Cuban government exploited the confiscated properties, and together with various hotel chains, including Iberostar, built and operates a number of resorts.[4]

Although discovery is still ongoing, the evidence gathered to date demonstrates that Expedia has trafficked Echevarría's and the Class Members' Properties by providing online booking services for hotels in Cuba, including the Trafficked Hotels.[5] In addition to directly benefitting from trafficking the Trafficked Hotels by receiving commissions or other fees for booking rooms there,[6] Expedia also derived indirect benefit from advertising revenues driven by, or related to, its offering and selling of reservations at the Trafficked Hotels.[7]

---

[2] The core liability issues are: (1) whether all privately owned real property in Cuba on which the Trafficked Hotels stand was confiscated before March 12, 1996; (2) whether Defendants benefitted from the commercial use of the Trafficked Hotels; (3) whether Defendants' trafficking was knowing and intentional; (4) whether Defendants obtained authorization from Plaintiff and Class Members to sell reservations at the Trafficked Hotels; and (5) whether Defendants compensated Plaintiff and the Class Members for Defendants' sale of reservations at the Trafficked Hotels.

[3] Echevarría is an heir to the Cayo Coco Property.

[4] *See* Exs. 2-8. A list of Exhibits and their description is attached as Exhibit 1.

[5] *See* Exs. 9-12, 14, 15; Ex. 16.

[6] *See* Exs. 10, 12-17, 22.

[7] *See* Exs. 7, 16, 18.

Echevarría sued on his own behalf, and on behalf of all similarly situated Class Members, after learning that Cayo Coco and at least 18 other Properties were being trafficked by Expedia.[8]

## III.   THE PROPOSED CLASS

Echevarría proposes the following class definition:

All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own a claim to real property in Cuba that was confiscated by the Cuban government prior to March 12, 1996, where now stands a hotel that was operated by Iberostar, for which reservations were offered and sold through Expedia, at any time after January 30, 2018.

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, affiliates, agents, and attorneys; and (b) any judges or justices involved in this action and any members of their immediate families.

This is an ascertainable and objectively defined Class.[9] Numerosity under Rule 23(a)(1) plainly exists because there are hundreds of thousands of Cuban-born immigrants who became naturalized U.S. citizens,[10] all of Cuba's privately owned real property was confiscated by the Castro regime,[11] and there are 20 Iberostar hotels[12] built and operated on confiscated Properties. Reservations at all of them were offered and sold to tourists and visitors by Expedia.[13] Similarly, typicality and commonality under Rules 23(a)(2) and (3) plainly exist because Echevarría's and all Class Member's claims arise out of Defendant's same wrongful conduct (trafficking), and all are based on the same legal theory (Title III). Adequacy under Rule 23(a)(4) also is satisfied, because Echevarría and his counsel have no conflicts, have vigorously litigated this case, and will continue to protect the interests of the Class.

---

[8] *See* Exs. 3, 5.

[9] This class definition is a refinement of the definition in the Complaint. *See* Am. Class Action Compl. for Damages, ECF No. 77. It has streamlined to clarify class membership, which is no impediment to class certification. *E.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[E]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

[10] As of 2018, 59% of the approximately 1.3 million Cuban-born immigrants in the United States were naturalized citizens. That is approximately 767,000 citizens. *See* Brittany Blizzard & Jeanne Batalova, *Cuban Immigrants in the United States*, Migration Policy Institute (June 11, 2020); Luis Noe-Bustamante, et al., *Facts on Hispanics of Cuban origin in the United States, 2017*, Pew Research Center (September 16, 2019) (noting similar percentage for 2017).

[11] *See* Ex. 23 at 6, 7, 11-17.

[12] *See* Exs. 3, 5.

[13] *See* Exs. 9, 10, 12, 14-16, 19-22.

4

Class treatment of the trafficking and other core liability issues also satisfies the predominance of common issues required by Rule 23(b)(3). When a defendant has engaged in a "common course of wrongful conduct" regarding an issue common to the claims of all class members, Rule 23(b)(3) is satisfied as to that issue. *See, e.g.*, *Charron v. Pinnacle Group N.Y., LLC*, 269 F.R.D. 221, 241 (S.D.N.Y. 2010) (partially certifying Rule 23(c)(4) liability class in case alleging RICO and NYCPA claims). "When a Court chooses to limit class certification only to certain common issues under Rule 24(c)(4) [typo in original] those issues necessarily predominate and satisfy the first element of Rule 23(b)(3)."); *Leib v. Rex Energy Operating Corp.*, 2008 WL 5377792, at *10, *16 (S.D. Ill. 2008) (noting that "when a court decides to limit a class action with respect to particular common issues only, such limitation will necessarily afford predominance as to those issues.") (citation omitted).

The other elements of Class Members' Title III claims will be resolved in individual actions that Class Members may file after the trafficking and core liability issues are determined class wide. The Act provides that money damages are calculated as "the fair market value of that property, calculated as being either the current value of the property or the value of the property when confiscated plus interest, whichever is greater," together with court costs and reasonable attorney's fees. 22 U.S.C. §6082(a)(1)(A)(i)(III). Expert evidence will provide the applicable values (then and now) of all the Properties trafficked by Defendants.

In short, this case warrants partial certification of core liability issues, including Defendants' trafficking, under Fed. R. Civ. P. 23(c)(4). Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues, when doing so would materially advance the litigation as a whole. An issues class here will resolve overarching class-wide core liability issues in an economically efficient manner that will conserve judicial and party resources, and promote judicial economy.

## IV.    THE REPRESENTATIVE PLAINTIFF

Plaintiff Mario Echevarría holds a claim to a 12.5% interest in the Cayo Coco Property through intestate succession, as set forth in the genealogy, and the expert report of Avelino Gonzalez, Esq.[14] Mr. Echevarría was not eligible to file claims with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22

---

[14] *See* Exs. 23, 24.

U.S.C. § 1643 et seq.), because he was not a U.S. citizen when his Property was confiscated. However, Echevarría was a U.S. citizen on what can be regarded as Title III's "Record Date" of March 12, 1996, when the Act was enacted, and on June 24, 2019, when this action was commenced after 23 years of presidential suspension.

Echevarría's and the Class's claims arise from Expedia's advertising, solicitation, and sales of rooms at the Trafficked Hotels, which constituted invasion of a legally protected interest and a monetary, pocketbook injury. *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1279 (11th Cir. 2022). Echevarría's injury is real, tangible, and concrete, because he is receiving no benefit from his interest in Property that was exploited to build and operate Trafficked Hotels. Expedia trafficked Echevarría's and Class Member's confiscated Properties for money, without Echevarría's and the Class Members' consent and without compensating them.[15] All Class Members have identical claims on the overarching liability issues. Because of Defendants' unlawful trafficking of the Properties, they are liable to Echevarría and Class Members for all damages recoverable under 22 U.S.C. § 6082(a).

## V.     LEGAL STANDARD

The Court has broad discretion to grant this motion. *See, e.g.*, *Cardenas v. Toyota Motor Corp.*, 2021 WL 5811741, at *6 (S.D. Fla. 2021). "[T]hat discretion must be carefully exercised according to the dictates of Federal Rule of Civil Procedure 23." *Id*. Of course, that discretion is "no license to engage in free-ranging merits inquiries . . . ." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Class certification is not the time "to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Id*. at 460 (cleaned up).

This motion satisfies Rule 23(a)'s elements of "numerosity, commonality, typicality, and adequacy of representation." *Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 551 (S.D. Fla. 2021). Partial certification of core liability issues, including trafficking, under Rule 23(c)(4)

---

[15] Title III makes clear that "[t]he wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner," 22 U.S.C. §§ 6081(2)-(3), by foreign investors who traffic in confiscated properties "complicate any attempt to return [these expropriated properties] to their original owners," 22 U.S.C. §§ 6081(5), (7), and undermine U.S. foreign policy aiming "to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government." 22 U.S.C. § 6081(6)(B).

also satisfies the predominance and superiority elements of Rule 23(b)(3), and is appropriate because it will materially advance the litigation. *See In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 667(D. Kan. 2013) (granting partial certification of liability issues in claims for unjust enrichment, breach of the duty of good faith and fair dealing, and violations of California's Unfair Competition Law and its Consumers Legal Remedy Act; holding that partial certification under Rule 23(c)(4) "will advance the resolution of plaintiffs' core claims on a class-wide basis," and will do so by "quantum leaps").

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." This rule allows a court to avoid making "class certification an all or nothing proposition." *1 McLaughlin on Class Actions* § 4:43 (11th ed.). The rule "recognizes that it may be worthwhile to achieve the efficiencies and benefits of class-wide adjudication of one or more issues that are common to all class members even if other issues will have to be [decided later]." *Id.*

Partial certification most commonly addresses core liability issues (as is sought here), leaving damages issues for later determination, either in a claims procedure or by allowing Class Members to file individual damages actions. *See id.*; *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 279 (S.D. Cal. 2023) (certifying an "issues class on liability with respect to Plaintiffs' remaining claims under the CLRA [California's Consumers Legal Remedies Act] and for intentional misrepresentation and concealment"). The *Hall* court reasoned that "[r]esolving the liability issue for potentially hundreds of thousands of class members in one proceeding would leave only the damages questions for any individual actions that followed." 344 F.R.D. at 279. So it is here. The core liability issues here, including trafficking, are predominating common issues identical to all Class Members' claims. They should be certified for class treatment.

## VI.    ARGUMENT

### A. Partial Certification Under Fed. R. Civ. P. 23(c)(4) Should be Granted

Courts may (and do) certify "particular issues" for class treatment under Rule 23(c)(4). *See, e.g.*, *Jamba Juice*, 308 F.R.D. at 244 ("[T]he Court will exercise its discretion pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure to certify the proposed class solely for purposes of determining liability."). Writing for the Seventh Circuit, Judge Posner explained in *Butler v. Sears*, that "a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class

members . . . is permitted by Rule 23(c)(4) and will often be the sensible way to proceed." 727 F.3d at 801 (affirming partial certification of core liability issues for a class alleging product liability claims, holding that a "single, central, common issue of liability" was sufficient to support class certification, and that it "could be followed by individual hearings to determine the damages sustained by each class member.").

In *McReynolds v. Merrill Lynch*, Judge Posner and the Seventh Circuit reversed denial of partial certification of a 42 U.S.C. §1981 action alleging disparate-impact racial discrimination, based on defendant's creation of teams of brokers, assignment of clients, and compensation. 672 F.3d at 491. The court held that even if hundreds of individual trials would be needed to determine individual liability and damages issues, "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful." *Id.*

So it is here. Class-wide adjudication of overarching, core liability issues, including trafficking, would materially advance the disposition of this litigation, which renders Rule 23(c)(4) certification particularly appropriate. The Court can resolve these core liability issues once, class wide, by answering the following questions: (a) whether all privately owned real property in Cuba on which the Trafficked Hotels stand was confiscated before March 12, 1996; (b) whether Defendants benefitted from the commercial use of the Trafficked Hotels (which is one of Title III's defined forms of trafficking; (c) whether Defendants' trafficking was knowing and intentional; (d) whether Defendants obtained authorization from Plaintiff and the Class Members to sell reservations at the Trafficked Hotels; and (e) whether Defendants compensated Plaintiff and the Class Members for Defendants' sale of reservations at the Trafficked Hotels.

Absent partial class certification, these core trafficking and liability issues would have to be litigated over and over in separate lawsuits, an extraordinarily inefficient and costly outcome that would deter Title III claimants from seeking compensation for Expedia's trafficking.[16] In dispositive contrast, a single proceeding adjudicating these questions will conserve party and judicial resources and promote uniformity of decisions. In light of these well-recognized benefits, partial certification of the trafficking and core liability issues under Rule 23(c)(4) is warranted.

---

[16] As demonstrated below, the possibility that particular individual cases might be time-barred because Expedia stopped trafficking hotels in Cuba during the pendency of this action also supports partial certification of core liability issues, including trafficking.

**B. Echevarría's Proposed Class Satisfies Fed. R. Civ. P. 23(a)**

This motion satisfies Rule 23's requirements for partial certification of an issues class on the overarching, core liability issues, including trafficking. As to threshold issues of standing and ascertainability of the Class, the Eleventh Circuit already found that Title III claimants like Echevarría and the Class Members have standing, because their injury is real, tangible and concrete. They are receiving no benefit from their interests in the Properties, which Expedia has trafficked for money, without their consent and without paying them any compensation, an injury that is analogous to unjust enrichment. *Del Valle*, 56 F.4th at 1279.

Second, the proposed Class is ascertainable because class membership is "capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014). Class membership will be ascertained using the following objective criteria: U.S. citizens who, since March 12, 1996, have owned a claim to the Properties, on which now stand hotels that were operated by Iberostar and trafficked by Expedia during the limitations period.

Identifying the Class Members' Properties is not difficult. It requires locating the Trafficked Hotels on a digital map of Cuba. The specific hotel locations will provide clear boundaries for the Class Members' claims. *See, e.g., Bell v. WestRock CP, LLC*, 2019 WL 1874694, at *6 (E.D. Va. 2019) (finding class ascertainable through property records, noting that "[t]he fact that applying the criteria could take significant time and effort . . . does not factor into the Court's ascertainability determination") (quotations omitted).

First, because the Castro regime stole, locked up and/or destroyed the public records after it stole Class Members' Properties,[17] the best notice practicable in the circumstances will be by publication.[18] *See, e.g., Herbst v. Able*, 47 F.R.D. 11, 21 (S.D.N.Y. 1969), *as amended*, 49

---

[17] *See* Ex. 23 at 23-26 (Cuba's current legal system prohibits persons in Cuba from seeking property records of Cayo Coco, and other confiscated Properties, for which they would risk imprisonment for up to 20 years.).

[18] The Class Notice (Ex. 26) will be emailed to Class Members whose addresses are known to plaintiff, including 27 former plaintiffs in *Mata v. Expedia, Inc.,* No. 19-cv-22529 (S.D. Fla) (ECF No. 5), and 10 other persons. *See* A. Rivero declaration, Ex. 29 at ¶ 5. These 37 Class Members own claims to confiscated properties on which three hotels operated by Iberostar now stand. *Id.* at ¶¶ 4, 7. The Class Notice also will be emailed to Aureliano Echevarría's surviving children, Plaintiff's niece and nephew, who possess claims to the same Property as Plaintiff.

F.R.D. 286 (S.D.N.Y. 1970) (holding that "published notice is 'the best notice practicable under the circumstances,'" where there was "extreme difficulty" in identifying "the large number of common stock purchasers and transferees [] for the purpose of individual notice" in a class action alleging securities fraud); *In re U. S. Fin. Sec. Litig.*, 69 F.R.D. 24, 47 (S.D. Cal. 1975) (Because plaintiffs, foreign purchasers of debentures bringing fraud and negligence claims, were ordered to publish notice to "any unknown and not easily ascertainable class members" . . . "(1) in various foreign countries, principally in Europe and Latin America, where most of the remaining unknown holders appear most likely to be, (2) in secular and financial newspapers and magazines of wide circulation, and (3) in appropriate foreign languages, adequate notification should be assured."). The proposed Class Notice (Exhibit 26) will advise Class Members that this case will adjudicate core liability issues, including trafficking, and invite them to opt-out within sixty (60) days if they do not wish to be bound by the Court's decision on trafficking and core liability issues. It will advise them that if Plaintiff Echevarría prevails at trial on the core liability issues, including trafficking, they may then file individual actions on all other issues within a reasonable time established by the Court.[19]

Second, if Echevarría prevails at trial on the class-wide, core liability issues, including trafficking, a second notice will be sent to Class Members who did not opt out. This second notice will advise Class Members that they may now bring their individual actions on the remaining issues of ownership and damages.

The proposed Class satisfies Rule 23(a) because:

1. the Class is so numerous that joinder of all members is impracticable;

---

[19] Expedia was trafficking the Trafficked Hotels until at least July 2019, six months before Plaintiff added Expedia to the complaint, and one and a half years before the limitations period expired. Thus, if this motion is granted, the Class Members should have at least one and a half years after core liability issues including trafficking are adjudicated in which to file their individual damages cases. If this motion were to be denied, this class action has tolled the time for Class Members to file individual cases on all issues. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 560-61 (1974) (Because "[t]he class suit . . . was filed with 11 days yet to run in the period . . . the intervenors thus had 11 days after the entry of the order denying them participation in the suit as class members in which to move for permission to intervene."); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 345 (1983) (applying *American Pipe* to putative class members' individual actions where class certification was denied); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1391 (11th Cir. 1998) ("If class certification is denied in whole or in part . . . those putative class members who were excluded from the class . . . [must] file a separate individual action . . . before the time remaining in the limitations period expires.").

2.    there are questions of law or fact common to the Class;

3.    the representative Plaintiff's claims or defenses are typical of the claims or defenses of the Class; and

4.    the representative Plaintiff will fairly and adequately protect the interests of the Class.

Fed. R. Civ. P. 23; *see Jamba Juice*, 308 F.R.D. at 244 ("certify[ing] the proposed class solely for purposes of determining liability" after "[p]laintiff . . . established that . . . all of the required elements of class certification [had] been met," including Rule 23(a)'s elements of numerosity, commonality, typicality, and adequacy). Here, as there, all four elements are satisfied.

### 1.    Numerosity Exists

The Class consists of far more than the minimum number of persons (approximately 40) generally required to demonstrate numerosity. *E.g.*, *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) ("[A]lthough mere numbers are not dispositive, the general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate . . . .'") (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members, and will find that it has not been satisfied when the class comprises 21 or fewer.").

Further, the putative Class Members also are geographically dispersed, rendering individual joinder impractical. *See Israel v. Avis Rent–A–Car Sys., Inc.*, 185 F.R.D. 372, 377 (S.D. Fla. 1999) ("Wide geographic dispersion of the potential class members supports a finding that joinder would be impracticable."); *Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 523 (N.D. Iowa 2003) ("The finding of geographic dispersion generally supports a finding of numerosity because such a finding supports the proposition that joinder is impracticable.").

Title III expressly recognizes that "[m]illions of [Cuban] citizens," "thousands of United States nationals," and "thousands more Cubans" who arrived in the United States and "later became naturalized citizens of the United States," had their property confiscated after the Castro regime seized power and began "trampl[ing] on the fundamental rights of the Cuban people." 22 U.S.C. § 6081(3).[20] Iberostar has operated at least 20 hotels in Cuba, many of which were built on multiple parcels of confiscated Properties. Further, more than sixty years after confiscation,

---

[20] *See* discussion *supra*, at page 4, and notes 11-13.

fractional interests in the original claims to the Properties have likely been inherited by multiple heirs, as we saw above regarding Mr. Echevarría's claim.[21] Among the 41 class members known to Plaintiff are persons who live thousands of miles apart,[22] and it is reasonable to conclude that Class Members so widely dispersed as to make individual joinder impracticable. Numerosity under Rule 23(a)(1) exists.

### 2. *Commonality Exists*

Rule 23(a)(2)'s commonality requirement is a "low hurdle." *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1360 (11th Cir. 2009) (vacating a denial of class certification, determining that a hybrid class action for injunctive relief under Rule 23(b)(2) and Rule 23(c)(4) should be considered "if the district court determines that common issues predominate and certifies a class for damages under subsection (b)(3)."). It is well-settled that "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citations omitted). The common issue "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

### a. The Legal Framework for Plaintiffs' Claims

Here, Echevarría and the Class Members assert claims alleging the same theory of recovery, namely, a right to recover damages under Title III for Expedia's unlawful trafficking of their property. Title III provides that "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns a claim to such property for money damages . . . ." 22 U.S.C. § 6082(a)(1)(A). Under Title III, "a person 'traffics' in confiscated property if that person knowingly and intentionally . . . engage[d] in a commercial activity using or otherwise benefiting from confiscated property . . . without the authorization of any United States national who holds a claim to the property." 22 U.S.C. § 6023(13)(A).

### b. Common Factual and Legal Questions

---

[21] Plaintiff Echevarría's niece and nephew possess claims to the same Property as Echevarría. *See* discussion, *supra*, at 6. There also are 27 former plaintiffs in *Mata v. Expedia, Inc.,* No. 19-cv-22529, ECF No. 5 (S.D. Fla), and 10 of their relatives, who possess claims to confiscated Properties on which stand three hotels operated by Iberostar. See Ex. 29 at ¶¶ 4, 5, 7, 8.

[22] Certain Class Members known to Plaintiff reside in Colorado, Maryland, New York and Puerto Rico. *See* Ex. 29. at ¶ 6.

Echevarría seeks certification under Fed. R. Civ. P. 23(c)(4) of five common questions under Title III, which will resolve core issues of liability, including trafficking, as to all Class Members' claims. Those questions are: (a) whether all privately owned real property in Cuba on which the Trafficked Hotels stand was confiscated before March 12, 1996; (b) whether Defendants benefitted from the commercial use of the Trafficked Hotels, which is one definition of trafficking under Title III; (c) whether Defendants' trafficking was knowing and intentional; (d) whether Defendants obtained authorization from Plaintiff and the Class Members to sell reservations at the Trafficked Hotels; and (e) whether Defendants compensated Plaintiff and the Class Members for their sale of reservations at the Trafficked Hotels.

Determining these core liability questions, including trafficking, during Phase One, will determine whether Defendants are subject to liability in Class Members' Phase-Two damages actions. If the core liability issues are resolved in Defendants' favor, there will be no Phase Two.

There will be class-wide, common, testimonial and documentary proof on the core liability, including trafficking, issues during the Phase One trial. Specifically:

- Cuban laws enacted since 1959, ordering the confiscation of all private property;[23]
- Charts produced by Expedia reflecting reservations at Iberostar Hotels in Cuba after January 2018;[24]
- Charts and reports produced by Expedia reflecting revenue received from reservations at Iberostar Hotels in Cuba after January 2018;[25] and
- Testimony confirming that Expedia did not obtain authorization or compensate any holders of claims to the Properties on which the Trafficked Hotels stand.

There are numerous common questions driving Expedia's potential liability to Class Members. The answers to these questions are "apt to drive the resolution of the litigation." *Jamba Juice*, F.R.D. at 241 (citing *Dukes*, 564 U.S. at 350). This is so, because Expedia's knowledge of Title III, and core liability issues including trafficking, will be addressed and resolved class-wide in a single proceeding—promoting the efficiency that Rule 23 is designed to achieve. Commonality under Rule 23(a)(2) exists.

### 3. *Typicality Exists*

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

---

[23] *See* Ex. 23 at 6, 7, 11-17.
[24] *See* Exs. 9, 10, 12, 13, 15, 16.
[25] *See* Exs. 11-14, 16-18, 22.

other class members have been injured by the same course of conduct.'" *Jamba Juice*, 308 F.R.D. at 240 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Echevarría's claims are typical of all Class Member claims, because all are based on the same legal theory (Title III of the Act), arise from similar core facts (Expedia's trafficking by booking reservation at Iberostar hotels that stand on real property confiscated by the Cuban government), and are not subject to any unique defenses. Moreover, Class Members have sustained, and will continue to sustain, the same injury that Echevarría has sustained from Expedia's trafficking of their confiscated Properties. Typicality under Rule 23(a)(3) exists.

### 4. *Adequacy of Representation Exists*

Adequacy of representation under Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The analysis of adequacy of representation "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Inc. v. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021).

As to the first inquiry, there is no conflict of interest between Echevarría and other Class Members. Echevarría has no claims that are antagonistic to the claims of other Class Members, and reasonably anticipates no difficulty in the management of this litigation as a partial class action. Echevarría is committed to the active and vigorous prosecution of this action and has engaged competent counsel experienced in litigation of this nature, who possess the resources and commitment to vigorously prosecute this case to a successful resolution.

Regarding the adequacy of counsel, "absent specific proof to the contrary, the adequacy of class counsel is presumed." *Diakos v. HSS Sys., LLC*, 137 F. Supp. 1300, 1309 (S.D. Fla. 2015). Echevarría's counsel will adequately represent the interests of the Class. Plaintiff's Counsel have no conflicts, have successfully litigated numerous class actions, and can do so here. *See generally* Ex. 25, Decl. of Andres Rivero, Esq.

### C.  Echevarría's Proposed Issues Class Satisfies Fed. R. Civ. P.  23(b)(3)

Because this motion seeks to certify only an issues class, the Rule 23(b)(3) analysis is limited to whether class-wide adjudication of the core liability issues, including trafficking,

satisfies the predominance and superiority elements of Rule 23(b)(3).[26] *See In re Motor Fuel*, 292 F.R.D. at 674 ("For particular issues to be certified using Rule 23(c)(4), the requirements of Rule 23(a) and (b) must be satisfied only with respect to those issues.").

A district court may certify an issues class even if the claim as a whole would not demonstrate a predominance of common issues, and even if the issues resolved class-wide would not alone resolve liability. *See, e.g.*, *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (A "court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement.").

Because the predominance and superiority of the proposed Rule 23(c)(4) issues class must be demonstrated only as to those core liability and trafficking issues, the Court need determine only whether common questions of law and fact predominate as to those issues, and whether partial certification of those issues would be superior to individual litigation.

### 1. *Predominance*

As demonstrated *supr*a in section V(B)(2)(b), each of the five trafficking and core liability questions that Echevarría seeks to certify is capable of resolution through class-wide proof.[27] In *Martin v. Behr Dayton Thermal Products, LLC*, 896 F.3d 405, 414 (6th Cir. 2018), a toxic tort class action, the Sixth Circuit affirmed certification of seven issues for class treatment, finding that they satisfied Rule 23(b)(3)'s predominance requirement because common questions predominated as to *each of the seven issues,* which applied in the same way to every property owner's claim, and needed to be answered only once.[28] So it is here. Each of the trafficking and core liability questions in this case can (and should be) resolved once, through class-wide proof,

---

[26] Those issues are: (a) whether all privately owned real property on which the Trafficked Hotels stand was confiscated before March 12, 1996; (b) whether Defendants benefitted from the commercial use of the Trafficked Hotels (one definition of trafficking under Title III); (c) whether Defendants' trafficking was knowing and intentional; (d) whether Defendants obtained authorization from Plaintiff and the Class Members to sell reservations at the Trafficked Hotels; and (e) whether Defendants compensated Plaintiff and Class Members for Defendants' sale of reservations at the Trafficked Hotels.

[27] *See*, *supra*, n.25.

[28] (1) Each defendant's role in creating the contamination; (2) the injuries were foreseeable to the defendants; (3) defendants were strictly liable for engaging in abnormally dangerous activities; (4) contamination from each defendant's facility was present in the Class Areas; (5) defendants' contamination and inaction caused injuries; and (6) defendants had negligently failed to investigate and remediate the contamination.

a decision that will apply equally to Plaintiff and all Class Members. If Expedia sold reservations at Iberostar resorts from January 2018 to present, it will be subject to Title III liability to Class Members who can prove their claim ownership and damages in subsequent individual actions.

In *Harris v. Medical Transp. Mgmt., Inc.*, 2021 WL 3472381, at *1 (D.D.C. 2021), medical transport drivers brought a class action under federal and District of Columbia ("D.C.") wage laws against the company that contracted with the companies that contracted with the drivers. After the court denied class certification of the D.C. wage claims, it granted partial certification of two issues common to the D.C. wage claims of all class members. *Id.* at *9. The court first noted that the Third, Fourth, Seventh, Eighth and Ninth Circuits endorse partial certification of common issues, where predominance and superiority can be demonstrated as to *those issues*. *Id.* at *7.[29] It then certified the threshold issues of whether defendant was a "joint employer" or "general contractor" as to the drivers, without which defendant could not be liable. *See id.* at *9-10. Plaintiffs intended to use defendant's service agreements, training policies, manuals, and corporate testimony to prove these issues class-wide. *Id.*

Similarly, Plaintiff here will use class-wide proof to demonstrate that Expedia knowingly trafficked the confiscated Properties without permission from or compensation to Plaintiff and Class Members. As in *Harris*, supra, resolving those core liability issues class-wide may or may not end this litigation, but will significantly advance it either way.

### 2. Superiority

In deciding whether partial certification of class-wide issues under Rule 23(c)(4) is superior, courts consider whether resolution of the certified issues will "materially advance" resolution of the dispute. *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1190 (10th Cir. 2023) (citing *In re Motor Fuel*, 292 F.R.D. at 665). In *Black*, an antitrust case, the Tenth Circuit affirmed certification of two common questions: the existence of an antitrust violation and the existence of impact. *Id.* at 1188. The court found that partial certification of those two issues was superior to other available methods for fairly and efficiently adjudicating the case, because it would generate common answers that would determine liability in a "single stroke." *Id.*

In the *Martin* toxic-tort case, the Sixth Circuit affirmed partial certification of seven issues.[30] 896 F.3d at 416. It recognized that absent partial certification, class members might not

---

[29] The Second Circuit agrees. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 227.

[30] *See supra* n. 28.

otherwise be able to pursue their claims, and even if they could, the seven certified issues would need to be litigated in every individual case. *Id.* The court held that the seven certified issues satisfied Rule 23(b)(3)'s superiority requirement because resolving them once would conserve judicial and party resources, while materially advancing the litigation. *Id.*

Similarly, *In re Marriott Int'l, Inc.*, 341 F.R.D. 128, 170 (D. Md. 2022), was a class action seeking damages for data breach, in which the court found that even though all important issues would not be resolved by adjudication of the duty and breach issues that were subject to class-wide proof, partial certification of those issues would be superior to none at all. The court held that to not certify the duty and breach issues would result in unnecessary, duplicative litigation, because the parties would have to litigate individual, related cases, which would require producing the same documents and putting on the same witnesses over and over again, at considerable expense. *Id.*

Proceeding individually here would not be economical or rational, because Class Members' claims will require a sizeable commitment of attorney time and resources, plus considerable investment in experts, court reporters, travel, data and document review, among other things. Overcoming Defendants' dogged resistance on every issue (real and imaginary) has taken considerable time and expense in this case, and in every other Title III case of which the undersigned are aware. For most Class Members, individual litigation would be impractical and prohibitively expensive. Class-wide resolution of trafficking and core liability issues will materially advance this action, while conserving judicial and party resources, by deciding those common issues only once. This is efficiency that cannot be obtained any other way.

Finally, "[b]efore certifying an issues class . . . the judge should be satisfied that common questions are sufficiently separate from other issues and that a severed trial will not infringe any party's constitutional right to a jury trial and will permit all the parties fairly to present the claims and defenses." 2 *Newberg and Rubenstein on Class Actions* § 4:90 (6th ed.). Echevarría's proposed trial plan accounts for these concerns and protects all parties' due process rights. It begins with a class-wide trial of core liability issues, including trafficking, in Phase One, which will carefully exclude any unnecessary overlap with any Class Member's individual issues. If Defendants win on the core liability issues, including trafficking, the case is over. If the Class wins, a second Class Notice will advise Class Members of that fact and their right to bring

17

individual damages claims on the remaining issues, including damages. Defendants' rights will be protected by this procedure, because all individualized issues will be decided individually.

## VII.    ECHEVARRÍA'S PROPOSED TRIAL PLAN

Applying Rule 23(c)(4), this motion has demonstrated that partial certification of core liability issues including trafficking is a balanced approach that efficiently accommodates the interests of all parties, including Class Members, while promoting judicial efficiency and conserving judicial and party resources. Echevarría proposes that this action be litigated in two phases. Core liability issues including trafficking will be adjudicated in Phase One. If Phase One decides those issues in Plaintiffs' favor, Class Members' individualized issues, including standing, claim ownership, and damages, will be addressed in Phase Two's individual actions.

### A.    Phase One

In Phase One of the litigation, a Class Notice will be published to inform Class Members of the litigation and their rights as members of the Class, including their right to exclude themselves from the Class by notifying the Court within sixty (60) days of the Class Notice's publication of their intent to exclude themselves ("opting out"). The Court will then hold a trial on the core liability and trafficking issues, which will control those issues in the claims of Class Members who did not timely opt out. The common, class-wide evidence on those issues during Phase One will include Defendants' internal e-mails, corporate policy memos and guidelines, responses to requests for admissions, and testimony from their executives.

If Phase One results in a judgment for Defendants on core liability issues including trafficking, this case is over. If it results in a judgment for the Class, that judgment will apply to individual claims that may be filed in Phase Two.

### B.    Phase Two

If Phase One results in a judgment for the Class on core liability and trafficking issues, Class Members who did not opt-out will have the right to file individual damages claims. A second Class Notice will advise them of the outcome of Phase One and their right to file individual claims to adjudicate their remaining, individualized issues within a specified time period (which should be the time remaining in the limitations period when this action was commenced, namely two years). During Phase Two, Defendants will retain all rights to contest the Class Members' individual issues (e.g. claim ownership and damages), which were not resolved in Phase One. If Defendants have individual defenses to a Class Member's claim, they

18

can then be asserted. This approach is substantively fair to all parties, who are free to assert their claims and interpose their defenses, while avoiding duplicative and potentially inconsistent rulings from different courts on common, class-wide issues.

## VIII.   PROPOSED CLASS NOTICE AND NOTICE PLAN

The proposed Internet Publication Notice (attached as Exhibit 26) will advise Class Members of this action,[31] the Court's partial class certification of core liability issues, including Defendants' trafficking of the Properties, and Class Members' right to exclude themselves by opting out within sixty (60) days. It will enable them to quickly determine if they possess a claim that might be affected by the Court's class-wide determination of core liability issues including trafficking. It also will link to a landing page and website maintained by the Class providing further information about this action, its Class definition and the rights and options of Class Members (a copy of the landing page containing this information is attached as Exhibit 27).

Both notices contain the information required by Rule 23:

a. The nature of the action;
b. The definition of the Class that was certified;
c. The Class claims, issues, or defenses;
d. That a Class Member who so desires may enter an appearance through an attorney;
e. That the Court will exclude from the Class any Member who timely requests exclusion;
f. The time and manner for requesting exclusion;
g. That Class Members who do not timely request exclusion will be bound by the Court's class-wide determination of core liability and trafficking issues; and
h. That Class Members will be able to file individual damages actions if the Court determines that Defendants unlawfully trafficked the Properties.

## IX.   PROPOSED PUBLICATION NOTICE PLAN

Plaintiff shall cause the Internet Publication Notice (Exhibit 26) to be published on the following websites for at least sixty (60) days after an Order granting this motion. It shall state the date certain when the sixty (60) day opt-out period will expire, and will be published in English and Spanish as follows:

### A.  Diario Las Américas Digital

---

[31] Class notice will be emailed to the Class Members known to Plaintiff. *See* n. 18.

Diario Las Américas has a dedicated and engaged Cuban-American user base, with roughly 37% of its users consisting of émigrés from Cuba and their descendants.[32] In addition to its prominent presence in South Florida, Diario Las Américas' digital platform reaches and captures a national audience.

1. *Banner Ads:* Banner ads will run on Diario Las Américas' digital platform for sixty (60) days. The banner ads that will contain a live link to a landing page and website Plaintiff maintains for the Class. The landing page and website will contain the detailed Class Notice and describe the Class Members' rights and options, including their right to exclude themselves by opting out within sixty (60) days.

2. *Newsletter:*   In addition to placing banner ads existing on Diario Las Américas' digital platform, Plaintiff will place banner ads in Diario Las Américas' newsletter. That newsletter is emailed twice a day, five days a week. For sixty (60) days, newsletters with Class Notice banner ads will be sent to Diario Las Americas' unique list of Cuban-American users.

**B.  Facebook Ads[33]**

Advertising on Facebook will reinforce the national reach of Plaintiff's Notice Plan. The Facebook ads will be targeted to a U.S. audience and tailored to Cuban-Americans to the maximum extent possible. Using Facebook's demographic data, these ads will be sent to users who have demonstrated what Facebook's algorithms deem Cuban-related "behaviors" or "interests." It is estimated that, with the proposed targeting, these Facebook ads will reach 10,000 to 30,000 accounts every day.

---

[32] *Diario Las Américas Weekly Print Edition*, https://www.diariolasamericas.com/diario-las-americas-weekly-printed-edition-n4240224 (last visited Mar. 14, 2024).

[33] Class notice via social media satisfies Rule 23 if it is targeted and the proponent provides details on the "proposed use and reasoning behind use of a particular social media method as part of a notice plan." *McLaughlin on Class Actions* § 5:81 (15th ed. 2018); *Woods v. Vector Mktg Corp.*, 2015 WL 1198593, at *4-5 (N.D. Cal. 2015) (approving use of Facebook for class notice); *accord Mark v. Gawker Media LLC*, 2014 WL 5557489, at *4 (S.D.N.Y. 2014) (approving social media publication notice to a class of defendant's former interns); *In re Facebook Biometric Info. Privacy Litig.*, 2018 WL 2412176, at *2 (N.D. Cal. 2018).

## X.    CONCLUSION

For these good and sufficient reasons, Echevarría respectfully requests that the Court certify the proposed issues Class under Fed. R. Civ. P. 23(c)(4), approve Plaintiff's proposed Notice Plan, and appoint his undersigned attorneys as Class Counsel.

Dated: March 20, 2024

Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: amalave@riveromestre.com
E-mail: bcruz@riveromestre.com
E-mail: bjosephs@riveromestre.com

By:      /s/ Andrés Rivero
         ANDRÉS RIVERO
         Florida Bar No. 613819
         ALAN ROLNICK
         Florida Bar No. 715085
         ANA C. MALAVE
         Florida Bar No. 83839
         SYLMARIE TRUJILLO
         Florida Bar No. 112768
         BRANDON CRUZ
         Florida Bar No. 1040423
         BRIANA JOSEPHS
         Florida Bar No. 1044192

         and

         **MANUEL VAZQUEZ, P.A.**
         2332 Galiano St., Second Floor
         Coral Gables, Florida 33134
         Telephone: (305) 445-2344
         Facsimile: (305) 445-4404
         E-mail: mvaz@mvazlaw.com

By:      /s/ Manuel Vazquez

MANUEL VAZQUEZ
Florida Bar No. 132826


**CERTIFICATE OF SERVICE**

I certify that on March 20, 2024, I electronically filed this document with the Clerk of the

Court using CM/ECF. I also certify that this document is being served today on all counsel of

record by transmission of notice of electronic filing generated by CM/ECF.


/s *Andrés Rivero*
ANDRÉS RIVERO

22