IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-22621-FAM

_____

**Mario Echevarria,** individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.

**Expedia Group, Inc.**, **Hotels.com L.P.**,
**Hotels.com GP, LLC**, and **Orbitz LLC**,

        Defendants.

_____

### DEFENDANTS' RESPONSE TO PLAINTIFF'S
### MOTION FOR PARTIAL CLASS CERTIFICATION

TABLE OF CONTENTS

I.      Introduction ........................................................................................................ 1

II.     Relevant Background ......................................................................................... 1

III.    Argument & Authorities .................................................................................... 3

        A.      Plaintiff's proposed class is not ascertainable. ....................................... 4

        B.      Plaintiff's proposed class fails to satisfy the Rule 23(a) requirements. ................... 5

                1.      Plaintiff has failed to prove that the proposed class is sufficiently
                        numerous to be a class action ...................................................... 5

                2.      The Proposed Class will not be adequately represented by the
                        putative class representatives or putative class counsel ............................ 7

        C.      None of the supposedly "common" liability issues that Plaintiff identifies
                are common for purposes of class certification. .................................................. 8

        D.      The Court should deny Plaintiff's request for partial certification under
                Rule 23(c)(4) as an improper end run around Rule 23(b)(3) because
                common questions of law or fact do not predominate over the myriad of
                individual issues ................................................................................................. 11

                1.      Individual issues of the fact and timing of claim ownership will
                        predominate ................................................................................. 13

                2.      Individual issues of scienter will predominate .......................................... 15

                3.      Individual damages and the Expedia Entities' defenses will
                        predominate ................................................................................. 15

                4.      The proposed class has manageability problems and determining
                        the proposed class is not administratively feasible. ................................. 16

        E.      A class action is not a superior method to adjudicate the claims at issue ............ 17

        F.      Plaintiff's issues class violates the Expedia Entities' Seventh Amendment
                Rights ................................................................................................................ 18

IV.     Conclusion ........................................................................................................ 19

## TABLE OF AUTHORITIES

### Cases

*Am. Honda Motor Co. v. Allen*,
   600 F.3d 813 (7th Cir. 2010) ......................................................................................... 14

*Amarelis v. Notter Sch. of Culinary Arts, LLC*,
   No. 6:13-CV-54-ORL-31KRS, 2013 WL 5798573 (M.D. Fla. Oct. 28, 2013)................. 9

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................ 7

*Aranaz v. Catalyst Pharm. Partners Inc.*,
   302 F.R.D. 657 (S.D. Fla. 2014).................................................................................... 5

*Ash v. Tyson Foods, Inc.*,
   546 U.S. 454 (2006)........................................................................................................ 8

*Bell v. Westrock CP, LLC*,
   No. 3:17-cv-829, 2019 WL 1874694 (E.D. Va. Apr. 26, 2019)...................................... 13

*Berger v. Compaq Comput. Corp.*,
   257 F.3d 475 (5th Cir. 2001) ......................................................................................... 7

*Brown v. Electrolux Home Prods.*,
   817 F.3d 1225  (11th Cir. 2016) .................................................................................... 3

*Califona v. Yamasaki*,
   442 U.S. 682 (1979)........................................................................................................ 3

*Cherry v. Dometic Corp.*,
   986 F.3d 1296 (11th Cir. 2021) ................................................................................. 4, 16

*City of St. Petersburg v. Total Containment, Inc.*,
   265 F.R.D. 630 (S.D. Fla. 2010)............................................................................... 11, 17

*Conigliaro v. Norwegian Cruise Line Ltd.*,
   2006 WL 7346844 (S.D. Fla. Sept. 1, 2006) ................................................................ 11

*Cooper v. Southern Co.*,
   390 F.3d 695 (11th Cir. 2004) ....................................................................................... 8

*Cox v. Am. Cast Iron Pipe Co.,*
    784 F.2d 1546 (11th Cir. 1986) ...................................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ................................................................................... 13

*Del Valle v. Trivago GMBH,*
    No. 19-22619-CIV, 2023 WL 5141699 (S.D. Fla. Aug. 10, 2023) ........................... 10, 15

*Dickens v. GC Services Ltd. P'ship,*
    706 F. App'x 529 (11th Cir. 2017) ................................................................. 8

*Elliot v. Carnival Cruise Lines,*
    No. 02-23253-CIV, 2003 WL 25677700 (S.D. Fla. Oct. 17, 2003) ............................ 6

*EQT Prod. Co. v. Adair,*
    764 F.3d 347 (4th Cir. 2014) ........................................................................ 13

*Gonzalez v. Amazon.com, Inc.,*
    No. 1:19-cv-23988-RNS, 2020 WL 1169125 (S.D. Fla. Mar. 11, 2020) ..................... 10

*Herbst v. Able,*
    47 F.R.D. 11, 21 (S.D.N.Y. 1969), *as amended,* 49 F.R.D. 286 (S.D.N.Y. 1970) ........... 17

*In re Am. Commercial Lines, LLC,*
    2002 WL 1066743 (E.D. La. May 28, 2002) ..................................................... 11

*In re ConAgra Peanut Butter Prods. Liab. Litig.,*
    251 F.R.D. 689 (N.D. Ga. 2008) .................................................................... 18

*In re Rhone-Poulenc Rorer Inc.,*
    51 F.3d 1293 (7th Cir. 1995) ........................................................................ 18

*In re Takata Airbag Prod. Liab. Litig.,*
    No. 15-MD-02599, 2023 WL 6274837 (S.D. Fla. Aug. 24, 2023) ............................ 11

*In re U.S. Fin. Sec. Litig.,*
    69 F.R. 24, 47 (S.D. Cal. 1975) ..................................................................... 17

*Isaacs v. Sprint Corp.,*
    261 F.3d 679 (7th Cir. 2001) ........................................................................ 13

*Johnson v. Kansas City S. Ry. Co.,*
    208 F. App'x 292 (5th Cir. 2006) ................................................................... 13

*Jones v. Jeld-Wen, Inc.*,
    250 F.R.D. 685 (S.D. Fla. 2008) ............................................................................................. 17

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    762 F.3d 1248 (11th Cir. 2014) ............................................................................................. 14

*Mata v. Expedia, Inc., et al.*,
    No. 1:19-cv-22529-CMA (S.D. Fla.) ................................................................................. 5, 7

*Melton v. Century Arms*,
    No. 16-CV-21008, 2018 WL 6980715 (S.D. Fla. Nov. 28, 2018) .................................. 17

*Murray v. Auslander*,
    244 F.3d 807 (11th Cir. 2001) ............................................................................................. 10

*O'Neill v. The Home Depot U.S.A., Inc.*,
    243 F.R.D. 469 (S.D. Fla. 2006) ......................................................................................... 11

*Perez v. Metabolife Intern., Inc.*,
    218 F.R.D. 262 (S.D. Fla. 2003) .................................................................................... 17, 18

*Randall v. Rolls-Royce Corp.*,
    637 F.3d 818 (7th Cir. 2011) .................................................................................................. 8

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fla. 2014) ........................................................................................... 6

*Rink v. Cheminova, Inc.*,
    203 F.R.D. 648 (M.D. Fla. 2001) ................................................................................... 16, 18

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
    211 F.3d 1228 (11th Cir. 2000) ........................................................................................... 19

*Sher v. Raytheon Co.*,
    419 F. App'x 887 (11th Cir. 2011) ...................................................................................... 14

*Spinelli v. Cap. One Bank*,
    265 F.R.D. 598 (M.D. Fla. 2009) .......................................................................................... 7

*Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*,
    577 F. Supp. 3d 295 (S.D.N.Y. 2021) ................................................................................ 15

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) ............................................................................................. 4

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ................................................................................. 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................. 8

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 3, 4

Fed. R. Civ. P. 23(a) ................................................................................................... 5, 17

Fed. R. Civ. P. 23(a)(2) ..................................................................................................... 8

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 1, 11, 16, 17

Fed. R. Civ. P. 23(c)(4) ...................................................................................... 1, 11, 16, 18

Federal Rule of Evidence 702 ........................................................................................ 13

**Regulations**

22 U.S.C. § 6023(13) ..................................................................................................... 10

22 U.S.C. § 6023(13)(B)(iii) ........................................................................................... 16

22 U.S.C. § 6023(15) ....................................................................................................... 4

22 U.S.C. §§ 6023(13)(A)(ii) ........................................................................................... 12

22 U.S.C.A. § 6082(1)(1)(A)(i)(III) ................................................................................. 15

80 Fed. Reg. 2,291 (Jan. 16, 2015) .................................................................................. 2

# I.     INTRODUCTION

Plaintiff Mario Echevarría ("Echevarría" or "Plaintiff") has moved for partial class certification under Rule 23(c)(4) only on what he describes as a handful of "core liability" issues. By seeking certification of an issues class, Plaintiff concedes that individualized inquiries are necessary to assess whether each putative class member has a valid Helms-Burton Act cause of action and, if so, is entitled to damages, or whether defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, LLC, and Orbitz LLC ("Expedia Entities") have defenses that defeat each putative class member's claim. Plaintiff's supposed "core liability" issues will not resolve any of the actual issues of liability for any putative class member and even Plaintiff's "core liability" delineation ignores individualized issues inherent in determining whether the Expedia Entities are liable to the putative class members.

Plaintiff's motion also falls far short of the rigorous analysis that Rule 23 demands. As a general matter, Plaintiff fails to cite to evidence in the record to support his certification claims, and relies on inapposite (and outdated) case law from outside the Eleventh Circuit to bolster his legal arguments.

The Court should decline to certify Plaintiff's proposed class ("Proposed Class") for several reasons. First, Plaintiff's class definition is not ascertainable because it is too subjective to identify potential class members and sweeps in individuals who have suffered no injury at all and cannot bring a claim. Second, Plaintiff offers no evidence that the proposed class satisfies the numerosity requirement. Third, neither Plaintiff nor putative class counsel are adequate because there is no evidence that Echevarria would adequately represent the class, and there are conflicts between class counsel and putative members of the class. Fourth, numerous individualized issues predominate over common issues, including issues of whether the putative class members have standing, can demonstrate liability against the Expedia Entities (especially as it relates to scienter), and can prove damages. Plaintiff cannot obtain certification of any issue class because Rule 23(c)(4) cannot be used to sidestep the predominance requirements set forth in Rule 23(b)(3). Fifth, there is no evidence that this class action is superior to other methods of adjudication. And finally, Plaintiff's bifurcated approach to this class action violates the Expedia Entities' Seventh Amendment rights. For each of these reasons, and those discussed below, Plaintiff's motion for partial class certification must be denied.

# II.     RELEVANT BACKGROUND

Notwithstanding Echevarría's contention that there are "undisputed facts" that support an issues class (Mot. at 2), Echevarría does not identify what those facts are. And the factual record that the parties have developed in discovery demonstrates that partial certification of an issues class is unwarranted here.

In January 2015, the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") amended the Cuban Asset Control Regulations ("CACR"). The amendment provided for general licenses allowing persons subject to U.S. jurisdiction to engage in transactions related to twelve categories of lawful travel without obtaining a specific license, and allowed persons subject to U.S. jurisdiction (like the Expedia Entities) to provide authorized travel services without seeking a specific license, provided they gather and retain certifications from their customers that the underlying travel was lawful. 80 Fed. Reg. 2,291 (Jan. 16, 2015). A specific license was still required to offer travel-related services related to travel to, from, and in Cuba for travelers not subject to U.S. jurisdiction. In April 2016, Expedia requested such a specific license for it and its affiliates worldwide to provide travel-related services for travelers not subject to U.S. jurisdiction. (Ex. B, EE-ECH2_00059518.) Later that year, OFAC issued a specific license to the Expedia Entities. (Ex. C, EE-ECH2_00000003-5.) Over time, the Expedia Entities continued to submit applications to OFAC to renew its license on a timely basis, and OFAC extended the Expedia Entities' licenses. (*See, e.g.,* Ex. D, EE-ECH2_00000022.)

Before beginning to offer online hotel reservations pursuant to the general and specific licenses, the Expedia Entities enacted policies to ensure that individuals booking reservations on its website for hotel accommodations in Cuba self-certified that they met one of the categories for lawful travel, as needed. (Ex. E, R. Barker Dep. 18:20-19:16, 21:20-23:1.) When a customer on an Expedia website reached the checkout page to book a Cuban hotel, for example, travelers were asked if they were subject to U.S. jurisdiction and, if so, were required to self-certify that their travel fell within one of the twelve lawful categories. (*Id.* at 36:16-37:6.)[1]

In June 2019, Mario Echevarría and other plaintiffs filed two lawsuits in the Southern District of Florida, asserting a Title III cause of action against various defendants, but not the Expedia Entities. (Compl., ECF No. 1; Compl., *Echevarria  v. Trivago GMBH* ("*Echevarria I*")*,* No. 1:19-cv-22620, ECF No. 1.) In this case, Echevarría sought to bring a class action on behalf of similarly situated individuals. As this Court is aware, in those complaints, Echevarría's counsel falsely claimed to have given pre-suit notice to the Expedia Entities. (Compl, ECF No. 1, at 2 n.3; *see also* Compl. at 2 n.2, *Echevarria I*, 1:19-cv-22620, ECF No. 1.) In fact, Echevarría's counsel only provided notice to the Expedia Entities that the Echevarría family owned Cayo Coco and alleged that the Expedia Entities had trafficked by soliciting persons to book reservations at certain hotels (including Iberostar Mojito) in August 2019. By that time, however, the Expedia Entities did not allow reservations at those hotels. (Ex. G, C. Coucke Dep. 44:1-4.)

---

[1] In April 2019, Expedia's specific license was renewed with additional conditions that required Expedia to collect these certifications from non-US travelers as well, and Expedia updated their process accordingly. (Ex. F, EE-ECH2_00000043.)

Echevarría subsequently filed an amended complaint naming the Expedia Entities as defendants in January 2020. (Pl.'s Am. Compl. 3, ECF No. 11.) On March 20, 2024, Plaintiff filed this motion for partial class certification, claiming that he seeks certification of "core liability issues, including trafficking, which are fundamental to his claim and the claim of all putative Class Members." (Mot. at 1.)

Discovery has demonstrated not only the challenges for Plaintiff to prove his own case but also that practically every element of Plaintiff's cause of action and the Expedia Entities' defenses present individualized questions not suitable for class treatment. To start, determining whether Plaintiff actually owns a claim to the property in question in this case—the island of Cayo Coco— will do nothing to answer the same question for any other individual purporting to own a claim to another piece of property. For example, while Plaintiff claims that the Cuban government confiscated Cayo Coco from his ancestors, the Expedia Entities' Cuban law expert explains that there is no evidence indicating that Echevarria or his predecessors owned Cayo Coco, and, to the contrary, the evidence shows that Cayo Coco may have been public property that was owned by the Cuban State well before Castro took power. (*See generally* Ex. E, A. Diaz Report). Plaintiff has also had to rely on extensive (and individualized) testimony from a Cuban law expert, Avelino Gonzalez, to establish his alleged ownership in Cayo Coco, including a lengthy recitation of the history of Cayo Coco and purported property rights regarding Cayo Coco, the acquisition of assets by succession through either testate or intestate inheritance, and a history of confiscations by the Cuban government. (*See generally* Mot., Ex. 23). And Plaintiff and his relatives have presented contradictory evidence concerning when Cayo Coco was allegedly confiscated by the Cuban government. Plaintiff's complaint says it was confiscated on August 16, 1960 (ECF No. 77 at para. 32), but Plaintiff testified it was confiscated in May 1959 (Ex. H, Mario Echevarría Dep. Tr. at 77:10-24). Plaintiff's sister testified it was confiscated at some point after 1966 (Ex. I, Esther Echevarría Dep. Tr. at 56:12-15), while documentary evidence shows that it was confiscated in 1993 (Ex. J, A. Diaz Report at 38-39; Ex. K, PLAINTIFF PROD_000136).[2]

### III.   ARGUMENT & AUTHORITIES

Class actions, in which representative litigants may bring claims on behalf of absent members, are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califona v. Yamasaki*, 442 U.S. 682, 700-01 (1979). Rule 23 requires a district court conduct a "rigorous analysis" to determine whether a case should be certified as a class. *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1233 (11th Cir. 2016). The party seeking certification bears the burden of proof, and must do so by a preponderance of the evidence. *Valley Drug Co. v. Geneva*

---

[2] A 27-page declaration from Gonzalez that describes his "opinions about the rights of ownership of the family of Mario Echevarria over Cayo Coco" is attached as Exhibit 23 to Plaintiff's motion.

3

*Pharms., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003); *Brown,* 817 F.3d at 1233. Courts do not draw "all inferences and present all evidence in the light most favorable" to Plaintiff. *Brown,* 817 F.3d at 1234. If doubts remain whether the standards for class certification are met, the Court should not certify. *Id.*. The presumption is against certifying a putative class, and the district court should refuse certification unless all requirements of Rule 23 are met. *Id.* at 1233-34.

As described below, Plaintiff's proposed class fails to meet the standards for class certification on almost every single level.

### A.      Plaintiff's proposed class is not ascertainable.

Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.,* 986 F.3d 1296, 1302 (11th Cir. 2021). "Class representatives bear the burden of establishing that their proposed class is adequately defined and clearly ascertainable, and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Id.* The Eleventh Circuit traditionally collapses class definition and ascertainability into one inquiry: "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1302, 1304. A class is inadequately defined when its definition relies on vague or subjective criteria. *Id.* at 1301. When a proposed class lacks an adequate definition, the district court cannot ascertain class membership. *Id.* at 1302.

Here, Plaintiff's new proposed class[3] is defined as:

> All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own a claim to real property in Cuba that was confiscated by the Cuban government prior to March 12, 1996, where now stands a hotel that was operated by Iberostar, for which reservations were offered and sold through Expedia, at any time after January 30, 2018.
>
> This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, affiliates, agents, and attorneys; and (b) any judges or justices involved in this action and any members of their immediate families.

(Mot. at 4.)

Acknowledging that even this revised class definition is vague and ambiguous, Plaintiff clarifies it further in his motion, stating that class members must meet the following criteria: "U.S. citizens who, since March 12, 1996, have owned a claim to…[confiscated p]roperties, on which now stand hotels that were operated by Iberostar and trafficked by Expedia during the limitations period [i.e., after January 30, 2018]." (Mot. at 9.) But the problem with this even further clarified class definition is that identifying U.S. nationals who have owned the claim to confiscated property since March 12, 1996, does not turn on objective, easily verifiable criteria. To the contrary, these are purely subjective determinations that can only be made by examining extensive evidence.

---

[3] Plaintiff calls this a "refinement" of the class definition in the Amended Complaint. (Mot. at 4 (citing Am. Compl. ¶ 84, ECF No. 77)).

A second infirmity in Plaintiff's proposed class definition is that it (and the proposed Internet Publication Notice attached as Exhibit 26 to the Motion (ECF No. 166-26)) does not specify that class members must have been a U.S. national as of March 12, 1996, or have acquired his/her interest in the property before that date. This Court previously ruled in the companion *Echevarria I* case that "Plaintiffs must show they were U.S. Nationals on March 12, 1996 and acquired their interest in the property before that date." (*See* Order Granting Mot. Dismiss at 1, *Echevarria I*, No. 1:19-cv-22620-FAM, ECF No. 115.) Thus, the proposed notice will effectively include individuals who have not suffered an injury giving rise to a claim under the Act. Overbroad classes that potentially open the class to individuals who have no claim means that the proposed class is not ascertainable given the current definition. *See MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, 342 F.R.D. 347, 355 (S.D. Fla. 2022) (class definition that was overbroad led to a class that was not ascertainable).

Plaintiff's class is not ascertainable, and that alone is reason to deny Plaintiff's motion.

## B.    Plaintiff's proposed class fails to satisfy the Rule 23(a) requirements.

Rule 23(a) of the Federal Rules of Civil Procedure allows a member of a class to sue as the class representative only where each of the following prerequisites are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy-of-representation. *See* Fed. R. Civ. P. 23(a). Failure to establish one of these requirements precludes class certification. *Valley Drug*, 350 F.3d at 1188. Because Plaintiff cannot meet the numerosity, commonality, or adequacy requirements of Rule 23(a), this action cannot proceed as a class action.

### 1.    Plaintiff has failed to prove that the proposed class is sufficiently numerous to be a class action

To satisfy Rule 23(a)'s numerosity requirement, Plaintiff must present evidence that the Proposed Class is so numerous that joinder is impractical, not merely that the class be numerous. *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 664 (S.D. Fla. 2014). "[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Plaintiff's motion baldly asserts that "the Class consists of far more than the minimum number of persons (approximately 40) generally required to demonstrate numerosity" (Mot. at 11), and then asserts that he has identified "41 class members" (*Id.* at 12). But Plaintiff fails to provide any competent evidence to demonstrate that even a single class member exists, much less 41 of them. (*Id.*) Rather, Plaintiff offers only his counsel's declaration stating that there are 27 individuals who were formerly plaintiffs in a different Helms-Burton case, *Mata v. Expedia, Inc., et al.,* No. 1:19-cv-22529-CMA (S.D. Fla.), who could be putative class members. (Decl. of A. Rivero, Pl.'s Mot., Ex.

5

29.) In that declaration, Plaintiff's counsel states in a conclusory fashion that three Iberostar ho-
tels—Playa Alameda, Selection Varadero and Laguna Azul—are located on property that purport-
edly belonged to the "Cantero family," and that the Cantero family "have claims to the Cantero
property and are putative class members in this case." (Pl.'s Mot. at 12.) But, tellingly, counsel's dec-
laration does not state that any of the Cantero heirs owned claims before March 12, 1996—one of
the elements of the class definition and a requirement for a cause of action under the Act. The since-
superseded first amended complaint in *Mata* likewise does not include any allegation of when the
Cantero heirs (or any of the other named plaintiffs) allegedly acquired their claims. And, importantly,
some of the other named plaintiffs in that *Mata* complaint—including two of Echevarria's rela-
tives—have since admitted that they acquired their purported claims after March 12, 1996. (*See* Am.
Compl. ¶¶ 1(e)–(f), *Mata*, No. 1:19-cv-22529-CMA, ECF No. 5 (identifying Consuelo Cuevas and
Carmen Florido as named plaintiffs); Order Granting in Part & Denying in Part Defs.' Mot. Dismiss
at 7–9, *Echevarria I*, 1:19-cv-22620-FAM, ECF No. 162 (dismissing Consuelo Cuevas's and Carmen
Florida's causes of action because they acquired ownership of their claim after March 12, 1996).)
Thus, the superseded *Mata* complaint does not even contain *allegations* suggesting that any of the 27
Cantero heirs are putative class members, much less any evidence proving that to be the case. *See
Brown,* 817 F.3d at 1234 (courts considering whether to certify a class do not "accept[] the allegations
in the complaint as true").

Plaintiff likewise provides no evidence of the additional 14 putative class members needed to
make his alleged 41. Instead, his motion again relies solely on conclusory statements that lack any
support. For example, Plaintiff asserts that, in addition to the 27 Cantero heirs, the class notice will
be mailed to "10 other persons" and will be e-mailed to "Aureliano's Echevarría's surviving children,
Plaintiff's niece and nephew, who possess claims to the same Property as Plaintiff." (Mot. at 9).
Again, these unsupported statements are not competent evidence, and competent evidence is what is
required. *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014) (conclusory state-
ments are insufficient to meet the burden of proof on a motion for class certification) (citing *Elliot v.
Carnival Cruise Lines*, No. 02-23253-CIV, 2003 WL 25677700, at *3 (S.D. Fla. Oct. 17, 2003)). Fur-
ther, even these unsupported assertions are insufficient; neither Plaintiff's motion nor his counsel's
affidavit even assert, much less establish, that any of these "10 other persons," including "Aureliano
Echevarria's surviving children" acquired ownership of their supposed claims before March 12,
1996.

Because Plaintiff has failed to provide sufficient evidence that there are *any* putative class
members, much less the 41 Plaintiff claims, the Court should deny partial class certification.

## 2.    The Proposed Class will not be adequately represented by the putative class representatives or putative class counsel.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The adequacy-of-representation requirement thus "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug*, 350 F.3d at 1189 (quotations omitted).

Although Plaintiff's complaint identifies Echevarría as the class representative, he has produced no evidence showing that Echevarría can adequately serve in that role. There is no declaration from Echevarría in support of his position as class representative. Nor does Echevarría include any sworn testimony (such as his deposition testimony) to support his view that he will be an adequate class representative. When he was deposed, Echevarria, who is 89 years old, stated among other things that he did not know which hotel chains were at issue in this lawsuit and did not know if Iberostar has any hotels in Cayo Coco. (Ex H, M. Echevarria Dep. 85:17-86:10.) Echevarría's omissions are fatal because the adequacy of a proposed class representative is not presumed. *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 481 (5th Cir. 2001) ("Adequacy is for the plaintiffs to demonstrate; it is not up to defendants to disprove the presumption of adequacy."); *Spinelli v. Cap. One Bank*, 265 F.R.D. 598, 614 (M.D. Fla. 2009) (rejecting a proposed class representative because, inter alia, she provided no affidavit reflecting her understanding and acceptance of the duties of a class representative). Indeed, without such evidence, a court cannot conduct the "rigorous analysis" that is required in ruling on a motion for class certification. *Sanchez v. Velocity Investments, L.L.C.*, No. 1:15-CV-3096-LMM-WEJ, 2015 WL 12777990, at *5 (N.D. Ga. Dec. 11, 2015).

There is also evidence of a substantial conflict between Plaintiff and his counsel, on the one hand, and individuals that, according to Plaintiff's theory, would be putative class members, on the other hand. In the same superseded *Mata* complaint that Plaintiff's counsel attaches to his declaration, Plaintiff's counsel also purported to represent heirs to the Cayo Coco property in addition to Plaintiff and his family. Specifically, that *Mata* complaint identified as heirs to Cayo Coco not only Mario Echevarria, Esther Sanchez, Consuelo Cuevas, and Carmen Florido (the "Echevarria Claimants"), but also Evelio Angulo Ramos, Silvia Angulo Ramos, Yoan Arturo Angulo Ledon, and Martha L. Garcia Angulo (the "Angulo Ramos Claimants"). *See* Am. Compl. at 3 n.5, *Mata*, No. 1:19-cv-22529-CMA, ECF No. 5. However, the Angulo Ramos Claimants were dropped from the *Mata* case and never mentioned as heirs to Cayo Coco in this case or Mario Echevarria's other lawsuit. The declaration of Evelio Angulo explains why: Plaintiff's counsel does not represent the Angulo Ramos Claimants and informed them that he could not do so *because their claim conflicts with Mario Echevarria's claim, which created a conflict of interest*. (Ex. L, Ramos Decl. ¶¶ 5-6.) This conflict of interest disqualifies

Plaintiff as a class representative and Plaintiff's counsel as class counsel. *See Cooper v. Southern Co.,* 390 F.3d 695, 721 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457 (2006) (finding conflict between named plaintiff and absent class members where class representative sought relief likely different than absent class members) (cited with approval in *Dickens v. GC Services Ltd. P'ship,* 706 F. App'x 529, 536 (11th Cir. 2017); *Randall v. Rolls-Royce Corp.,* 637 F.3d 818, 824 (7th Cir. 2011) (holding that actual conflict of interest is independent ground for denial of class certification).

## C.   None of the supposedly "common" liability issues that Plaintiff identifies are common for purposes of class certification.

Class certification is appropriate only where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court has explained, "that language is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 (2011) (cleaned up). "What matters to class certification…is not the ***raising*** of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Brown,* 817 F.3d 1238 (emphasis added) (quoting *Wal-Mart,* 564 U.S. at 349). Thus, "[a] question is common when 'determination of its truth or falsity will resolve an issue that is central to the validity of **each one of the claims** in one stroke.'" *Brown,* 817 F.3d at 1238 (emphasis added) (quoting *Wal-Mart,* 564 U.S. at 349).

In attempting to satisfy this requirement, Plaintiff identifies five purportedly common questions:

> (a) whether all privately owned real property in Cuba on which the Trafficked Hotels stand was confiscated before March 12, 1996;

> (b) whether Defendants benefitted from the commercial use of the Trafficked Hotels, which is one definition of trafficking under Title III;

> (c) whether Defendants' trafficking was knowing and intentional;

> (d) whether Defendants obtained authorization from Plaintiff and the Class Members to sell reservations at the Trafficked Hotels; and

> (e) whether Defendants compensated Plaintiff and the Class Members for their sale of reservations at the Trafficked Hotels.

(Mot. at 13.) But none of these questions are common for purposes of class certification because answering these questions for Echevarria's case does not answer them for any other putative class member.

8

**First**, the question of whether all the property under every Iberostar hotel in Cuba was confiscated before March 12, 1996 is not subject to proof through common evidence. To the contrary, the evidence in this case shows that the Cuban government did not confiscate all property in Cuba and certainly did not do so simultaneously. The Expedia Entities' Cuban law expert has opined that (1) there is no evidence indicating Plaintiff or his predecessors owned the Cayo Coco island; (2) the evidence indicates that Cayo Coco may have been public property, owned by the Cuban State, even before 1959; and (3) there is no evidence that the Cuban government confiscated Cayo Coco from Plaintiff's predecessors. (Ex. J, A. Diaz Report at 5. ). Indeed, even Plaintiff and his relatives have offered wildly contradictory evidence concerning when the property underlying his claim, Cayo Coco, was supposedly confiscated. Plaintiff's complaint says it was confiscated on August 16, 1960 (ECF No. 77 at ¶ 32), Plaintiff testified it was confiscated in May 1959 (Ex. H, Mario Echevarría Dep. Tr. at 77:10-24), Plaintiff's sister testified it was confiscated at some point after 1966 (Ex. I, Esther Echevarría Dep. Tr. at 56:12-15), and Plaintiff has produced a document purportedly acquired by his later brother stating that the Cuban government acquired possession of Cayo Coco in 1993 (Ex. K, PLAINTIFF PROD_000135–136). In sum, Plaintiff's own evidence and allegations provide multiple alternative dates of supposed confiscation, undermining any notion that evidence about the purported confiscation of Cayo Coco will resolve questions related to property underlying Iberostar hotels outside of Cayo Coco.

The question of when privately owned real property was confiscated likewise is not common because there is no evidence that any Iberostar hotel—much less all of them—stands on land that was once privately owned, as opposed to standing on land that was always owned by the Cuban government. Again, the evidence concerning Plaintiff's own claim helps demonstrate the point. As the Expedia Entities' expert explains, there is significant authority for the proposition that, even before Castro took power, the Cuban government did not permit private ownership of keys like Cayo Coco. (Ex. J, Expert Report of Ambar Diaz at 19.) Similarly, the pre-revolutionary Cuban government also owned all property in the maritime terrestrial zone. (*Id.* at 17-19.) Because there is a need for individualized proof as to whether property for which the putative class members have claims was confiscated by the Cuban government, those individualized issues undermine commonality. *See, e.g., Amarelis v. Notter Sch. of Culinary Arts, LLC*, No. 6:13-CV-54-ORL-31KRS, 2013 WL 5798573, at *5 (M.D. Fla. Oct. 28, 2013) ("the need for individualized proof also undermines a finding of commonality").

**Second**, whether the Expedia Entities "benefitted" from commercial use of particular Iberostar hotels is likewise not a common issue. To start, the evidence conclusively shows that the Expedia Entities did not offer reservations at every Iberostar hotel in Cuba. For those Iberostar hotels where the Expedia Entities did offer reservations, the timing and extent of the offerings was hotel-specific. Again, the hotels underlying Plaintiff's action prove the point. Expedia began offering

reservations at the Iberostar Mojito several months before it began offering reservations at the Colonial Cayo Coco. (Ex. M, EE-ECH2_00000120; Ex. N, EE-ECH2_00000121; Ex. G, C. Coucke Dep. 48:7-15.) The scope of any benefit was likewise quite different; although Expedia earned only a miniscule amount of revenue from offering reservations at both of the Subject Hotels, revenue from bookings at the Iberostar Mojito was 22 times higher than revenue from the Colonial Cayo Coco. (Ex. O, EE-ECH2_00062465.) In sum, evidence concerning whether Expedia offered reservations at *one* Iberostar hotel and, if so, what benefit (if any) was obtained from doing so, does not answer the same questions for *any other* Iberostar hotels, much less *all* Iberostar hotels. The issue is therefore not common. There is no commonality when a plaintiff fails to present "issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (plaintiff could not demonstrate commonality when there was no "identical evidence on behalf of every member of the class to prove offer, acceptance, consideration, or the essential terms" in breach of contract claim; instead, each class member's claim depended on "individualized facts and circumstances").

     **Third**, whether the Expedia Entities "knowingly and intentionally" trafficked in confiscated property by offering reservations at any Iberostar hotel is a quintessentially individual issue, not a common one.[4] To satisfy this element of a Helms-Burton claim, the plaintiff must show that at the time of the alleged trafficking, the defendant knew the Cuban government confiscated the property and that a U.S. national owned a claim to the property. *See* 22 U.S.C. § 6023(13) ("[A] person 'traffics' in confiscated property if that person knowingly and intentionally ... engages in a commercial activity using or otherwise benefiting from confiscated property…without the authorization of any United States national who holds the claim to the property."); *Gonzalez v. Amazon.com, Inc.*, No. 1:19-cv-23988-RNS, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (holding that Helms-Burton Act plaintiff failed to adequately allege scienter because allegations did not "demonstrate that the Defendants knew the property was confiscated by the Cuban government nor that it was owned by a United States citizen"). The determination of this issue in one instance will not determine it in any other. For example, in *Del Valle v. Trivago GMBH*, the district court held that the plaintiffs failed to sufficiently plead that the Expedia Entities knowingly and intentionally trafficked in the property at issue there because they did not allege facts showing that the Expedia Entities offered reservations at the subject hotels after receiving notice that those hotels were the subject of the plaintiffs' claim. *Del Valle v. Trivago GMBH*, No. 19-22619-CIV, 2023 WL 5141699, at *5–6 (S.D. Fla. Aug. 10, 2023). Of course, the court's resolution of the scienter issue in that case did not drive the resolution of the issue in any other case. Indeed, in this case the Court held that Plaintiff did adequately allege scienter

---

[4] A discussion of the individualized issues relating to scienter follows at page 17 below.

because Plaintiff (falsely) alleged that the Expedia Entities did offer reservations at the subject hotels after receiving written notice from Plaintiff identifying the subject hotels.

**Finally**, the last two issues Echevarría identifies likewise do not present common issues with common answers. Whether the Expedia Entities obtained authorization from or paid compensation to one person has no bearing on whether they did so for others. Because each putative class member's claim has numerous individualized inquiries—even as to liability—an issues class is not warranted.

> **D.      The Court should deny Plaintiff's request for partial certification under Rule 23(c)(4) as an improper end run around Rule 23(b)(3) because common questions of law or fact do not predominate over the myriad of individual issues.**

Under Rule 23(c)(4), a district court may certify a class action "with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Yet even "particular issue" class actions are subject to Rule 23(b)(3)'s predominance requirement. Rule 23(b)(3) allows certification when the court finds that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Where predominance is not met under Rule 23(b)(3), however, an issues class should not be certified.

Echevarría contends that the Court need only perform a Rule 23(b)(3) analysis for the "core liability issues" like trafficking, and that the Court need not conduct a predominance analysis for standing or damages. (*See* Mot. at 14-15.) Echevarría is wrong. Plaintiff cites to a District of Kansas case, and a Second Circuit case, but that is not the law in the Eleventh Circuit or in this Court. Last August, this Court stated that courts "have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement." *In re Takata Airbag Prod. Liab. Litig.*, No. 15-MD-02599, 2023 WL 6274837, at *13 (S.D. Fla. Aug. 24, 2023) (Moreno, J.) (citing *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630 (S.D. Fla. 2010) (quoting *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 481 (S.D. Fla. 2006)). In *Takata,* this Court also approvingly cited *In re Am. Commercial Lines, LLC*, 2002 WL 1066743, at *13 (E.D. La. May 28, 2002), for the proposition that "the cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement, before Rule 23(c)(4) becomes available to sever common issues for class trial," and cited with approval *Conigliaro v. Norwegian Cruise Line Ltd.*, 2006 WL 7346844, at *8 n.8 (S.D. Fla. Sept. 1, 2006), which advanced that same argument. *Id.* Thus, the entire class "as a whole" must satisfy Rule 23(b)(3)'s predominance requirement, not just the piecemeal "core liability issues" as Plaintiff argues.

As Plaintiff fails to meet the predominance requirement, as discussed below, the Court should not permit him to end-run around Rule 23(b)(3) by severing "common issues". To establish

the Expedia Entities' liability under the Act, Echevarría (and each putative class member) must prove the following:

1. He is a U.S. national (and must have been a U.S. national as of March 12, 1996);

2. He owns a claim to property that was confiscated by the Cuban government on or after January 1, 1959;

3. He acquired ownership of the claim before March 12, 1996;

4. The property was not the subject of a claim certified under the International Claims Settlement Act;

5. He was not eligible to file a claim under the International Claims Settlement Act; and

6. The Expedia Entities "trafficked" in the property by knowingly and intentionally doing either of the following without the authorization of any United States national who holds a claim to the property

   a. engaging in commercial activity using or otherwise benefiting from confiscated property; or

   b. causing, directing, participating in, or profiting from such commercial activity by another person.

22 U.S.C. §§ 6023(13)(A)(ii), 6082.

Nearly all of these elements involve individual inquiries. For just the first three elements, the following individual questions exist:

1. Is the putative class member a U.S. national?

2. Did the putative class member become a U.S. national before March 12, 1996?

3. Does the putative class member have some claim to property in Cuba?

4. If so, was that property in Cuba confiscated by the Cuban government?

5. If so, was that property confiscated by the Cuban government before March 12, 1996?

6. Is that property located on land in which an Iberostar hotel is currently located?

7. If so, did the class member acquire ownership to that claim before March 12, 1996?

As shown below, Plaintiff ignores the individualized evidence that must be presented to establish the claims of each putative class member on several issues.

**1. Individual issues of the fact and timing of claim ownership will predominate.**

Individual inquiries will be required to determine whether any putative class member owns a claim to property confiscated by the Cuba government, the contours of that claim, and when the class members acquired ownership of that claim.

The ownership of a claim to property confiscated by the Cuban government on or after January 1, 1959 is a fact-intensive inquiry. Federal courts are reluctant to grant class certification when proof similar to Plaintiff's was relied on to prove class members' property ownership. *See, e.g., EQT Prod. Co. v. Adair*, 764 F.3d 347, 363 (4th Cir. 2014) (no ascertainability regarding ownership of gas estates because ownership changed hands frequently and records of ownership were 20 years out of date, and finding that reviewing local land records regarding ownership constituted a "significant administrative barrier to ascertaining the ownership classes."); *Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) (finding class certification "decidedly inappropriate" when the case involved "different conveyances by and to different parties made at different times over a period of more than a century"); *Johnson v. Kansas City S. Ry. Co.*, 208 Fed. Appx. 292, 297 (5th Cir. 2006) (concluding that a class failed to satisfy Rule 23(a) when the case involved "a multitude of property owners, each with individual conveyances stating different things"). The inquiry into property ownership is complicated by the inability of the putative class members to obtain property records in Cuba, as asserted by Plaintiff. (Mot. at 9 n.17). Plaintiff further contends that the "specific hotel locations will provide clear boundaries for the Class Members' claims," (Mot. at 9), but the location of the hotels does not establish which putative class members had interests to that property.[5] Even if identifying the class members' properties were "not difficult," it will be difficult to determine if a class member has a claim to that property.

For Echevarría, Plaintiff contends that he holds a claim to a 12.5% undivided interest in the Cayo Coco Property through a combination of testate and intestate succession over a period of more than 100 years, as set forth in an unauthenticated genealogy and the declaration of Plaintiff's expert Avelino Gonzalez, Esq. (Mot., Exs. 23-24). Even if Gonzalez's report was admissible evidence,[6] his 27-page declaration (submitted without exhibits) demonstrates that determining an

---

[5] Plaintiff cites *Bell v. Westrock CP, LLC*, No. 3:17-cv-829, 2019 WL 1874694, at *6 (E.D. Va. Apr. 26, 2019), for the proposition that examination of property records does not render a class action unascertainable, but that case involved a determination of who owned or resided at property—at present—one-half mile from a paper mill. That was a much simpler determination than here. Here, by contrast, Plaintiff's proposed class anticipates an examination of *older Cuban* property records relating to *multiple* locations to determine *past* ownership of *multiple* properties.

[6] The Expedia Entities expect to challenge Avelino's expert declaration under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and Federal Rule of Evidence 702. The Expedia Entities reserves the right to move to exclude Avelino's report and testimony under *Daubert* until after it deposes

individual's standing to bring claims – and become a part of the class – requires an individual (and complicated) assessment. Avelino's declaration also says nothing about how Echevarria has a 12.5% undivided interest in the Cayo Coco property. (*See* Mot., Ex. 23.)

This Court may look no further than the procedural history of this case to find that issues of claim ownership are subject to individual inquiries. In the original complaint in the *Accor* case, Plaintiff Echevarria was joined by named plaintiffs Esther Sanchez, Consuela Cuevas, and Carmen Florido. (Case No. 1:19-cv-22621-FAM, ECF No. 1). When this Court granted the Expedia Entities' first motion to dismiss with leave to amend, it held that "Plaintiffs must show they were U.S. Nationals on March 12, 1996 and acquired their interest in the property before that date." (Case No. 1:19-cv-22620-FAM, ECF No. 115, at 1). The Court found that none of the plaintiffs adequately pleaded those facts, but the Court granted plaintiffs leave to amend. (*Id.*) When plaintiffs filed their third amended complaint, Esther Sanchez remained in the caption, but she was not otherwise identified as a plaintiff in the body of the new complaint, presumably because Sanchez was not a U.S. national on March 12, 1996, as she had inherited her interest in the property before then. (Case No. 1:19-cv-22620-FAM, ECF No. 116.). Subsequently, when the Expedia Entities moved to dismiss the third amended complaint, the Court granted it as to Cuevas and Florido because both did not inherit their interests until after March 12, 1996. (Case No. 1:19-cv-22620-FAM, ECF No. 162 at 7-8.)

This procedural history, as it relates to three putative class members, proves that individual and fact-intensive issues relating to claim ownership will predominate over the common issues for the entire class.

---

Avelino. Plaintiff previously offered Avelino to be deposed on April 5, 2024, after the deadline for the Expedia Entities to file its opposition to Plaintiff's motion for partial class certification. Plaintiff subsequently withdraw that proposed deposition date, and no date has been offered for Avelino's deposition. If the Court is inclined to grant Plaintiff's motion for partial class certification, the Expedia Entities request that the Court delay that ruling on Plaintiff's motion until after their motion to exclude Avelino's expert testimony is filed and ruled upon. The Eleventh Circuit has previously found a district court erred when it refused to perform a full "*Daubert*-like critique of the proffered expert's qualifications" in connection with a motion for class certification. *Sher v. Raytheon Co.,* 419 F. App'x 887, 890 (11th Cir. 2011). In that case, the Eleventh Circuit found that "when an expert's report or testimony is critical to class certification, as it is here ..., a district court must conclusively rule on any challenge to the expert's qualifications or submission prior to ruling on a class certification motion." *Id.* (quoting *Am. Honda Motor Co. v. Allen,* 600 F.3d 813, 815–16 (7th Cir. 2010); *see also Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.,* 762 F.3d 1248, 1258 n.7 (11th Cir. 2014). Because Avelino's expert report is critical to class certification, the district court should not grant the class certification motion until it rules on a *Daubert* challenge to Avelino's expert testimony.

### 2.      Individual issues of scienter will predominate

One of the core liability issues identified by Plaintiff is whether "Defendants' trafficking was knowing and intentional." That is a property-specific determination. Court rulings, including from this Court, confirm that trafficking in confiscated property is an individualized inquiry. "The Helms-Burton Act also requires that plaintiffs demonstrate that defendants 'knowingly and intentionally trafficked' in confiscated property." *Del Valle v. Trivago GMBH,* 2023 WL 5141699, at *4 . In that Helms-Burton action, Judge Scola, Jr. made clear that from a pleading perspective, "[g]eneral knowledge that property in Cuba, may have been confiscated, expropriated, or stolen by the Castro regime is not sufficient." *Id.* at *6; *see also Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, 577 F. Supp. 3d 295, 311 (S.D.N.Y. 2021) (recognizing that "a defendant must at least have had reason to know that the property in which it allegedly trafficked was confiscated by the Cuban government."). When the Court denied the Expedia Entities' motion to dismiss on this point, it did so because Echevarría falsely alleged that the Expedia Entities continued offering reservations at the Subject Hotels after Echevarría gave notice of his claim to these properties. (Order Denying Defs.' Mots. Dismiss 8, ECF No. 135.) In doing so, the Court deemed Echevarría's other allegations—including those focused on more general knowledge of property confiscations in Cuba—as being insufficiently conclusory. (*Id.*) Because the scienter element of trafficking is itself a highly individualized inquiry, and there are allegedly twenty different Iberostar "hotels, resorts, and other tourist attractions" described in the operative Complaint (ECF. No. 77, ¶ 86), common issues of fact do not predominate.

### 3.      Individual damages and the Expedia Entities' defenses will predominate

Plaintiff concedes that issues of damages are subject to individualized inquiry. (Mot. at 15) In fact, Plaintiff states clearly that the "other elements of Class Members' Title III claims will be resolved in individual actions that Class Members may file after the trafficking and core liability issues are determined class wide." (Mot. at 5.)  The Helms-Burton Act allows plaintiffs several options to measure their damages. Plaintiffs may seek damages equal to the present value of the confiscated assets at issue. *See* 22 U.S.C.A. § 6082(1)(1)(A)(i)(III). Alternatively, plaintiffs can seek damages equal to the value of confiscated property on the day it was confiscated, with interest through today. *Id.* The fact that putative class members have alternatives to calculate their damages underscores the individualized inquiry necessary to determine damages. Here, because presence of individual damages is accompanied by individualized questions regarding liability, predominance has not been met. *Brown*, 817 F.3d at 1240 ("Furthermore, individual damages defeat predominance when they are accompanied by significant individualized questions going to liability.") (internal quotations omitted).

Plaintiff further concede that any defenses that the Expedia Entities have must be asserted as part of individualized inquiries in "Phase Two" after "core liability and trafficking issues" are resolved in "Phase One." (Mot. at 18-19) ("If Defendants have individual defenses to a Class Member's claim, they can then be asserted."). One of the defenses that the Expedia Entities may have is the lawful travel defense, insofar as the Helms-Burton Act does not impose liability for "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii). This is a highly-specific inquiry that is property-specific and specific to the alleged persons who used the property in question.

The individualized inquiries relating to damages and defense means that a class action is not the appropriate vehicle to resolve Plaintiff's claims.

A Rule 23(c)(4) issues class is appropriate only if resolution of particular common issues "would materially advance the disposition of the litigation as a whole." *Rink v. Cheminova, Inc.,* 203 F.R.D. 648, 669 (M.D. Fla. 2001) (cleaned up). But certification is improper if noncommon issues are inextricably entangled with the common issues, or . . . the uncommon issues are too unwieldy or predominant to be handled adequately on a class action basis." *Id.* (cleaned up). Here, even if there are limited common questions on liability, there are individual issues that relate to standing, scienter, defenses and damages that are predominant. It simply does not make sense for a trial to take place on "common liability issues" and then a second trial takes place on the rest of the case.

### 4. The proposed class has manageability problems and determining the proposed class is not administratively feasible.

While the Eleventh Circuit has made clear that "administrative feasibility" is not "an inherent aspect of ascertainability" under *Cherry,* the plaintiff must still propose a method to identify class members with specificity.[7] Here, Plaintiff contends that, to determine the putative class members, the Court should permit notice by publication. Plaintiff intends to make a publication notice on several website for at least 60 days after the order granting their class certification motion and to mail out the class notice to the class members "known to Plaintiff." (Mot. at 19.) But courts in this district have determined that individuals self-identifying as putative class members in response to notices by publication would still lead to individualized mini-trials as to whether the individuals were, in fact, members of the putative class. *See Perez v. Metabolife Intern., Inc.,* 218 F.R.D. 262, 269 (S.D. Fla.

---

[7] In *Cherry*, the 11th Circuit recognized that while administrative feasibility is not a prerequisite under Rule 23(b), it "has relevance for Rule 23(b)(3) classes, in the light of the manageability criterion of Rule 23(b)(3)(D)." *Cherry*, 986 F.3d at 1303. Because Plaintiff contends that the putative class satisfies the Rule 23(b)(3) elements of predominance and superiority (*see* Mot. at 14-18), an analysis of administrative feasibility is warranted here.

2003); *see also Melton v. Century Arms,* No. 16-CV-21008, 2018 WL 6980715, at *7 (S.D. Fla. Nov. 28, 2018) (rejecting publication by notice and noting that "fact that Plaintiffs may be able to notify a large group of putative class members does not, alone, establish ascertainability.") Allowing putative class members to self-identify as owning a "claim to real property that was confiscated by the Cuban government prior to March 12, 1996" would also require the Expedia Entities to challenge each claimant's ownership claim, demanding significant factual inquiries. This demonstrates that the class definition is not administratively feasible.

In support of his method by publication, Plaintiff cites *Herbst v. Able*, 47 F.R.D. 11, 21 (S.D.N.Y. 1969), *as amended,* 49 F.R.D. 286 (S.D.N.Y. 1970), and *In re U.S. Fin. Sec. Litig.,* 69 F.R. 24 (S.D. Cal. 1975)—two half-century old cases from New York and California—to supposedly support publication by notice to establish the ascertainability requirement (*see* Mot. at 10). Those cases are outdated, factually inapposite, and are not binding on this Court.[8]

### E.    A class action is not a superior method to adjudicate the claims at issue.

Along with proving all of the Rule 23(a) prerequisites and that common issues predominate over individual inquires, Plaintiff must also prove that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)). To determine the superiority requirement, a district court must consider: (1) the interests of the class members in controlling the prosecution of separate actions; (2) the extent and nature of the litigation already commenced by class members; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties in management of a class action. *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 685, 695 (S.D. Fla. 2008) (citing Fed. R. Civ. P. 23(b)(3)). Plaintiff fails to make that showing. Plaintiff claims only that for most class members, "individual litigation would be impractical and prohibitively expensive." (Mot. at 17). No evidence supports this claim. Indeed, individual plaintiffs have filed several lawsuits in this District, demonstrating that a class action is not superior. And when claims at issue involve more than *de minimis* sums, a putative class member is more likely to have an interest in filing and controlling his or her own lawsuit. *See City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 644 (S.D. Fla. 2010) (class action not superior when damages per class member of $380,000 were "clearly quite substantial"); *Jeld-Wen*, 250 F.R.D. at 696  (class action not superior when claims at issue "do not involve a *de minimis* sum so that an individual plaintiff would be

---

[8] Neither *Herbst* nor *In re U.S. Sec. Litig.* involves certification of an issues class. Both cases involved class actions on behalf of owners of debentures for two companies, and the courts found that publication by mail was an appropriate means to notify potential class members because those class members were easily ascertainable. *See Herbst*, 47 F.R.D. at 17; *In re U.S. Fin. Sec. Litig*, 69 F.R.D. at 47 (allowing notice by mail because "holders of the 58% of the debentures are known to the plaintiffs and [Defendant] knows the name of other, and perhaps most, debenture holders.") Here, by contrast, neither Plaintiff nor the Expedia Entities has determined who is in the putative class.

discouraged from filing his own suit, as is demonstrated in fact by the individual actions already proceeding[.]"). Here, Plaintiff himself claims damages of more than $5 million for the two hotels at issue in this case, and more than $6 million for the hotel at issue in his other case against the Expedia Entities. If Echevarria's damages calculation is correct (and Expedia Entities do not concede that it is), each member of the class could be seeking millions of dollars against the Expedia Entities. Given the significant damages alleged by potential class members, individuals have a vested interest in pursuing individual lawsuits.

Furthermore, as detailed above, the difficulties in managing the Proposed Class would quickly overwhelm any negligible efficiency of certifying a class. Where certification would result in multiple mini-trials to determine class membership, causation, and damages, the class action mechanism loses its efficiency and certification should be denied. *Perez*, 218 F.R.D. at 273 ; *Rink*, 203 F.R.D. at 652 .

Plaintiff is also wrong when he asserts that the resolution of the certified issues will "materially advance" resolution of the dispute. (Mot. at 16.) Even if Plaintiff were to show that after a trial, for example, all privately owned real property on which the Trafficked Hotels (as Plaintiff has defined that term) stand was confiscated before March 12, 1996, individual putative class members would still have to demonstrate—in a second trial—that he or she has a claim to a different property, that the Expedia Entities knowingly and intentionally trafficked in that property, and the amount of damages, if any, that putative claim member has. And the Expedia Entities would need to try their affirmative defenses as to each putative class member. In sum, partial class certification will not materially advance this litigation.

### F.   Plaintiff's issues class violates the Expedia Entities' Seventh Amendment Rights

Finally, the Court should deny certification of an issues class pursuant to Rule 23(c)(4) because such a class could violate the parties' Seventh Amendment jury-trial rights. *See In re ConAgra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 698 (N.D. Ga. 2008). The Seventh Amendment right to a jury trial is the right to have issues decided by the jury first impaneled to hear them, and to not have those findings reexamined by a subsequent factfinder. *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). Were a jury to consider Plaintiff's proposed five "common issues," that jury would still not be determining whether the Expedia Entities were liable to the putative class members. *See id.* Instead, subsequent juries must still examine issues of standing and defenses—including claim ownership—in deciding whether to impose liability on Defendants. In deciding whether to impose liability on Defendants, subsequent juries will necessarily reexamine the first jury's resolution of Plaintiff's five "common questions," which all go to elements of liability. For example, core liability issue number 4 and 5 address whether the "Defendants obtained authorization

from Plaintiff and Class Members to sell reservations at the Trafficked Hotels; and whether Defendants compensated Plaintiffs and the Class Members for Defendants' sale of reservations at the Trafficked Hotels. But resolution of those two issues depends on who the putative class members are, which is to be determined in the second trial or Phase Two. In other words, there is simply no way to prevent this re-examination of liability issues, in violation of the Defendants' Seventh Amendment rights.

## IV.   CONCLUSION

There is no real dispute that individualized inquiries will be necessary to resolve this litigation, even if the Court certified a partial class. Over twenty years ago, the Eleventh Circuit cogently reasoned that "[o]nce one understands that the issues involved in the instant case are predominantly case-specific in nature, it becomes clear that there is nothing to be gained by certifying this case as a class action; nothing, that is, except the blackmail value of a class certification that can aid the plaintiffs in coercing the defendant into a settlement." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1241 n. 21 (11th Cir. 2000). The Court should deny Plaintiff's attempt to certify an issues class for the reasons stated above.

19

Dated: April 3, 2024

Respectfully submitted,

SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300 Telephone
(512) 495-6399 Facsimile

By: _____

    David D. Shank (*pro hac vice*)
    Texas Bar No. 24075056
    dshank@scottdoug.com
    Cheryl Joseph LaFond (*pro hac vice*)
    Texas Bar No. 24104015
    cjoseph@scottdoug.com
    Mary Byars (*pro hac vice*)
    Texas Bar No. 24097443
    mbyars@scottdoug.com
    Kennon L. Wooten (*pro hac vice*)
    Texas Bar No. 24046624
    kwooten@scottdoug.com
    Philip D. Nickerson (*pro hac vice*)
    Texas Bar No. 24107880
    pnickerson@scottdoug.com
    Rebecca Jahnke (*pro hac vice*)
    Texas Bar No. 24129982
    bjahnke@scottdoug.com
    Santosh Aravind (*pro hac vice*)
    Texas Bar No. 24095052
    saravind@scottdoug.com

AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
(305) 374-5600 Telephone
(305) 349-4656 Facsimile

By: *s/ Lorayne Perez*
    Lorayne Perez
    Florida Bar No. 085265
    lorayne.perez@akerman.com

*Attorneys for Defendants Expedia Group, Inc.,*
*Hotels.com L.P., Hotels.com GP, LLC, Orbitz, LLC*

20