UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 19-22621-CIV-MORENO**

MARIO ECHEVARRIA, individually and on
behalf of all others similarly situated,

        Plaintiff,

vs.

EXPEDIA, INC., HOTELS.COM L.P.,
HOTELS.COM GP, LLC, and ORBITZ, LLC,

        Defendants.

_____/

## ORDER DENYING MOTION FOR PARTIAL CLASS CERTIFICATION

Plaintiff, Mario Echevarria, requests to represent a class with claims under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "Act"). The putative class members seek remuneration against the Defendants, Expedia Group LLC, Hotels.com GP, LLC, and Orbitz LLC, for trafficking in Plaintiff's property, which was confiscated by the Cuban government. Here, the putative class members claim ownership interests in properties where twenty Iberostar hotels currently sit. Echevarria requests the Court certify an issues class under Federal Rule of Civil Procedure 23(c)(4) centered on five core liability issues, such as whether the Expedia Defendants trafficked in the properties, whether the trafficking was knowing and intentional, whether the Expedia Defendants benefitted from the trafficking, whether the Expedia Defendants obtained authorization from the class members to sell the hotel bookings, and whether the Expedia Defendants compensated class members for the bookings. Echevarria proposes a two-step procedure. First, the Court would adjudicate the core liability issues, and then in phase two address each class member's individual ownership and damages issues.

Because the Court finds the Rule 23 requirements are not met and the proposal unmanageable in a case where individual ownership issues predomindate, the Court denies the motion for class certification. After having the benefit of oral argument, it is

      **ADJUDGED** that the motion for the partial class certification (D.E. 166) is DENIED.

## I.    <u>Background</u>

On March 12, 1996, Congress passed the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "Act"). Title III of the Act (22 U.S.C. §§ 6081-6085), created a private cause of action against traffickers of property confiscated by the Castro regime. Title III ensures that "victims of [the Cuban government's] confiscations . . . [are] endowed with a judicial remedy in the courts of the United States," to deny "traffickers [of confiscated property] any profits from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11). Title III provides that "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property[.]" 22 U.S.C. § 6082(a)(1)(A). Plaintiff brings a putative class action under Title III to recover damages against the Defendants, Expedia Group LLC, Hotels.com GP, LLC, and Orbitz, LLC, whom he claims trafficked in Iberostar Hotels built on confiscated real property. There are at least twenty Iberostar Hotels on the island.

Because it would be impossible to certify a full class action as each class membe has an individual ownership claim and damages, Plaintiff Mario Echevarria only moves for *partial* class certification of core liability issues under Federal Rule of Civil Procedure 23(c)(4). He asserts that these core liability issues are fundamental to each class member's claim and that the evidence of these liability issues is the same as to all the properties. The motion does not seek to certify the issue of ownership of confiscated properties by the class members. That issue is left for individual class members to prove in individual damages actions. As Echevarria puts it, all

2

putative class members who might want to pursue their individual damages, would benefit from a victory on the class-wide adjudication of core liability issues, and then have the opportunity to prove claim ownership and damages in an individual action. He proposes a two-step procedure. First, the Court would adjudicate the core liability issues, and *then* address each class member's individual ownership and damages issues.

Plaintiffs' position is that class-wide adjudication of overarching, core liability issues, including trafficking, would materially advance the disposition of the litigation. Absent partial class certification, Echevarria argues the core liability issues would have to be litigated over and over again in separate lawsuits, which would deter Title III claimants from seeking compensation from Expedia's trafficking. Certifying a partial issue class would in Plaintiff's view conserve party and judicial resources and promote uniformity of decisions. The core liability issues that Plaintiff seeks to certify as an issues class are:

(1) whether all privately owned real property in Cuba on which were built hotels operated by Iberostar (the "Trafficked Hotels"), was confiscated before March 12, 1996;

(2) whether Defendants benefitted from the commercial use of the Trafficked Hotels;

(3) whether Defendants' trafficking was knowing and intentional;

(4) whether Defendants obtained authorization from Plaintiff and Class Members to sell reservations at the Trafficked Hotels; and

(5) whether Defendants compensated Plaintiff and the Class Members for Defendants' sale of reservations at the Trafficked Hotels.

Echevarria proposes the following class definition:

All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own a claim to real property in Cuba that was confiscated by the Cuban government prior to March 12, 1996, where now stands a hotel that was operated by Iberostar, for which reservations were offered and sold through Expedia, at any time after January 30, 2018.

> This class definition excludes (a) Defendants, their officers,
> directors, management, employees, subsidiaries, affiliates, agents,
> and attorneys; and (b) any judges or justices involved in this action
> and any members of their immediate families.

Echevarria is the proposed representative plaintiff. He claims he owns a 12.5% interest in the Cayo Coco Property through intestate succession, as set forth in the genealogy and in the expert report of Avelino Gonzalez, Esq. Echevarria was not eligible to file claims with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq.*) because he was not a United States citizen when his property was confiscated. However, Echevarria was a United States citizen on what can be regarded as Title III's "Record Date" of March 12, 1996, when the Act was enacted, and on June 24, 2019, when this action was commenced after 23 years of presidential suspension of the Title III cause of action.

The Expedia Defendants oppose the motion arguing that Plaintiff's class is not ascertainable, fails to satisfy the numerosity requirement, neither the named Plaintiff nor Plaintiff's counsel are qualified to represent the class, individualized issues predominate over the class issues, and there is no evidence that the class action procedure is superior to other methods of adjudication. Finally, the Expedia Defendants argue the Plaintiff's bifurcated approach violates their Seventh Amendment right to a jury trial.

## II.      Legal Standard and Analysis

Federal Rule of Civil Procedure 23(c)(4) provides in pertinent party that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues[.]" Rule 23 requires district courts conduct a "rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citations omitted). "For a district court to certify a class action, the named plaintiffs

must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)."[1] *Id.* at 1265.

Last year, the District of Columbia Circuit recognized that the parameters of certifying an "issues class" "presents an unsettled and fundamental issue of law relating to class actions." *Harris v. Medical Trans'p. Mgm't, Inc.*, 77 F.4th 746 (D.C. Cir. 2023) (quoting *In re Medical Transp. Mgmt., Inc.*, No. 21-8006, 2022 WL 829169, at *1 (D.C. Cir. March 17, 2022)). In the context of Rule 23(c)(4) issue certification, "[t]ypically the [Rule 23] (c)(4) trial will determine common issues relating to the conduct of the defendant – which is to say issues that are identical for all class members. And it will leave questions regarding individualized relief – including eligibility for relief and calculation of damages – for future proceedings." Myriam Gilles & Gary Friedman, *The Issue Class Revolution*, 101 Boston University L. Rev. 133, 138 (2021).

---

[1] In its entirety, Federal Rule of Civil Procedure 23(a) and (b) state:
(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
(b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
(1) prosecuting separate actions by or against individual class members would create a risk of:
(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

The party seeking certification bears the burden of proof. *Valley Drug Co. v. Geneva Pharms. Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003); *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1233 (11th Cir. 2016). A district court that has doubts about whether "the requirements of Rule 23 have been met should refuse certification until they have been met." *Brown*, 817 F.3d at 1233-34.

The Court will proceed to analyze the Plaintiff's standing, the ascertainability of the class, and the Rule 23(a) and (b) requirements to determine whether Plaintiff meets the burden of proof or whether doubts remain requiring this Court to deny the motion for partial class certification.

### A. Standing

Whether the named plaintiff has standing to sue is a threshold question in any class action case; thus, "any analysis of class certification must begin with the issue of standing." *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *Prado-Steiman v. Bush*, 221 F.3d 1255, 1279-80 (11th Cir. 2000). The parties do not dispute Mario Echevarria's standing to bring this case.

### B. Ascertainability

Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). "Class representatives bear the burden of establishing that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Id.* (quoting *Little v. T-Mobile USA, Inc.*, 591 F.3d 1392, 1395 (11th Cir. 2012)). The Eleventh Circuit traditionally collapses class definition and ascertainability into one inquiry: "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1302, 1304. "A class is inadequately defined when its definition relies on vague or subjective criteria." *Id.* at 1301. When a proposed class

lacks an adequate definition, the district court cannot ascertain class membership. *Id.* at 1302. This decision turns on the contours of the proposed class definition, which reads:

> All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own a claim to real property in Cuba that was confiscated by the Cuban government prior to March 12, 1996, where now stands a hotel that was operated by Iberostar, for which reservations were offered and sold through Expedia, at any time after January 30, 2018.
>
> This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, affiliates, agents, and attorneys; and (b) any judges or justices involved in this action and any members of their immediate families.

The Expedia Defendants make two arguments as to this definition and the ascertainability requirement. First, they argue that identifying U.S. Nationals who have owned the claim to confiscated property since before March 12, 1996, does not turn on objective, easily verifiable criteria. In Expedia's view, this determination will require an examination of extensive evidence. Second, the class definition does not state that the class members must have *acquired* their interest in the property by the March 12, 1996 statutory cutoff date. This Court previously held at the motion to dismiss stage that plaintiffs must show they were U.S. Nationals on March 12, 1996 and acquired their interest in the property before that date. *Echevarria v. Expedia Grp. Inc.*, No. 19-22620, Order Granting in Part and Denying in Part Motion to Dismiss (ECF 162) (Sept. 12, 2023) (dismissing plaintiffs Consuelo Cuevas and Carmen Florido for failure to allege that they acquired their interest in the property prior to March 12, 1996). Therefore, Expedia claims the class definition is overbroad because it includes members who may not have been U.S. Nationals who acquired a claim by March 12, 1996. As it relates to the date, the class definition merely states that the property was confiscated prior to March 12, 1996. Therefore, the Expedia Defendants assert the class is not ascertainable. *See MSP Recovery Claims, Series*

*LLC v. Auto-Owners Ins. Co.*, 342 F.R.D. 347, 355 (S.D. Fla. 2022) (class definition that was overbroad and included members who were not injured led to a class that was not ascertainable).

The parties argue past each other on the first point regarding whether identifying class members turns on objective verifiable criteria. Plaintiff asserts, in his motion, that because he does not seek class certification on the ownership issue, Defendants' point that determining ownership would require review of extensive evidence is irrelevant. The question then is whether how Plaintiff defines the class matters in this context where the focus is on certifying core liability issues. Plaintiff argues that it does not matter because the examination of a class member's ownership would occur on an individual basis, which is what partial certification would provide—the opportunity for class members to individually put on their best evidence of claim ownership and U.S. citizenship in individual damages actions after adjudication of the core liability issues. Even if Plaintiff is correct on this point, the Court agrees with the Defendants on the second point that the definition is overbroad given the law of the case.

To reiterate, this Court found that plaintiffs must have been U.S. nationals on March 12, 1996 to be entitled to pursue the cause of action under the Act. That issue is on appeal in *Regueiro v. Am. Airlines, Inc.*, No. 23-12568 (11th Cir. 2023). Also on appeal is the issue of whether equitable tolling applies to the claims of two plaintiffs who were U.S. nationals on March 12, 1996, but did not acquire their claims until after that date and during the 23-year presidential suspension of the private right of action under Title III of the Act. *Del Valle v. Expedia Grp. Inc.*, No. 23-12966 (11th Cir. 2023). Although the Court agrees with Plaintiff that the Eleventh Circuit may reach a different conclusion, the current law of the case is that a class member must have obtained the claim to the property prior to March 12, 1996, for the claim to

be cognizable.  Therefore, the Court agrees with Defendants that the class is not ascertainable as currently defined.

C. *Federal Rule of Civil Procedure 23(a) Requirements*

The motion for partial class certification argues that the Rule 23(a) requirements are met. The Rule 23(a) requirements are:

1. The Class is so numerous that joinder of all members is impracticable;
2. There are questions of law or fact common to the Class;
3. The representative Plaintiff's claims or defenses are typical of the claims or defenses of the Class; and
4. The representative Plaintiff will fairly and adequately protect the interests of the Class.

Fed. R. Civ. P. 23(a); *see Lilly v. Jamba Juice*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) ("Since Plaintiff has established that, with the exception of determining damages, all of the required elements of class certification have been met, the Court will exercise its discretion pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure to certify the proposed class solely for purposes of determining liability."). The Court will now examine the Rule 23(a) requirements to determine if they are met here.

1. *Numerosity*

To establish numerosity, Plaintiff must show that "the class is so numerous that joinder of all members is impracticable." *See Vega*, 564 F.3d at 1266-67 (quoting Fed. R. Civ. P. 23(a)(1)). While "mere allegations of numerosity are insufficient," Rule 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (quoting *Vega*, 564 F.3d at 1267). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Id.* "Although mere numbers are not dispositive, the

general rule in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Id.* (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). "The Court may also consider factors such as 'the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits.'" *Id.* (quoting *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004)).

The Court must determine whether the Plaintiff meets his burden of proof to show that there are 41 Class Members or whether other factors favor a finding of numerosity. Plaintiff relies on the fact that there are 20 Iberostar hotels operating in Cuba, many of which were built on multiple parcels of confiscated properties. Further, more than sixty years after confiscation, fractional interests in the original claim to these properties have likely been inherited by multiple heirs. In the class certification motion, Plaintiff asserts that his niece and nephew also possess a claim to the same property as him on Cayo Coco. The motion also asserts that 27 former plaintiffs from the Cantero family in *Mata v. Expedia, Inc.*, No. 19-22529, ECF 5 (S.D. Fla.) and ten of their relatives also possess claims to confiscated properties, where now three other Iberostar hotels stand.[2] The Playa Alameda, Selection Varadero, and Laguna Azul hotels are located on property that purportedly belonged to the Cantero family. Motion for Class Certification at Exh. 29 (ECF 166-29). More specifically, Plaintiff's counsel filed a declaration stating that he filed the complaint in the *Mata* case, which identifies the class members who are part of the Cantero family, who have a claim for Defendants' trafficking of their confiscated

---

[2] On September 18, 2019, this Court recused from *Mata v. Expedia, Inc.*, due to friendship with a plaintiff in that case, Raoul Garcia Cantero III.

property, where three Iberostar Hotels operate.[3] In addition to 27 Cantero family heirs, Plaintiff's

motion states that the class notice will be mailed to "10 other persons" and will be emailed to

Aureliano Echevarria's surviving children, Plaintiff's niece and nephew, who possess claims to

the same property as the Plaintiff.

The question is whether this information is sufficient to meet Plaintiff's burden to show

numerosity. Conclusory statements are insufficient to meet the burden of proof on a motion for

class certification. *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014)

(conclusory statements are insufficient to meet the burden of proof on a motion for class

certification) (citing *Elliot v. Carnival Cruise Lines*, No. 02-23253-CIV, 2003 WL 25677700, at

*3 (S.D. Fla. Oct. 17, 2003)).   Neither the Amended Complaint from the *Mata* case describing

the Cantero family's claims nor the Plaintiff's counsel's declaration establish that these

individuals are viable plaintiffs by having obtained the claim to the property prior to March 12,

1996. Moreover, the counsel's statement that the individuals are geographically dispersed is also

conclusory and insufficient to establish numerosity. Finally, the class notice identifying the

Plaintiff's niece and nephew and 10 others is not sufficient to meet the burden. It is simply not

specific enough to aid a finding of numerosity.

Overall, the Plaintiff also relies on general data that 767,000 Cuban citizens became

naturalized U.S. Nationals, whose property was confiscated by the Cuban government. Because

---

[3] Plaintiff's counsel's declaration identifies the following persons as part of the Cantero family: Margarita Perkins, Ana M. Perez Perkins, Elena Susy Perez Perkins, Maria Del Carmen Perkins, Ricardo Perkins, Paul Perkins, Bill Perkins, Luis A. Perez Perkins, Patricia A. Perez Perkins, Silvia Milian, Santiago D. Milian, Patricia A. Milian, Edward G. Milian, Susan M. Blackmon, Cristina M. Ganz, Rosa Maria Fernandez Milian, Ingrid Fernandez Milian, Jaime Fernandez Milian, Alex Fernandez Milian, Vivian Viurrun Farrell, Bertha Eugenia Bustamante, Raoul G. Cantero,Anuka G. Cantero, Mario G. Cantero, Eugenio Cantero, Adriana Cantero, Esther Perkins, and Malia De Lourdes Cantero.

The original Amended Complaint in *Mata* included the Cantero heirs as named plaintiffs, but the Second Amended Complaint dropped them as named plaintiffs and was filed as a putative class action, but it does not seek remuneration for Defendants' trafficking of properties where Iberostar hotels operate.

there are twenty Iberostar resorts standing on confiscated property, Plaintiff asserts that data is sufficient to find numerosity exists. While this data makes some showing of numerosity, it does not sufficiently connect the dots to show there are numerous U.S. nationals who have valid claims based on the trafficking of Iberostar Hotels. To rule otherwise would essentially mean that there would be a Title III class for any claim because of the sheer number of Cuban nationals who became naturalized U.S. Citizens. *See Vega*, 564 F.3d at 1267 (finding that although T-Mobile is a large company with many retail outlets, it might be tempting to assume that the number of retail associates the company employed in Florida during the relevant period would be sufficient to overcome the generally low hurdle presented by Rule 23(a)(1)). The Court must have a way of making a supported factual finding and the sheer number of Cuban nationals who became naturalized citizens is insufficient to convince the Court that numerosity is satisfied. In so holding, the Court recognizes that the Plaintiff need not show the precise number of class members, but, here, the ones that Plaintiff identifies do not sufficiently convince the Court that they are a part of the class.

### 2. *Commonality*

Class certification is appropriate where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A question is common when 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Brown*, 817 F.3d at 1238 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). "[A]ny competently crafted class complaint literally raises common 'questions' … What matters to class certification . . . is not the raising of common 'questions' – even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive resolution of the litigation." *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2551). That being said, Rule 23(a)(2)'s commonality requirement is generally a "low hurdle." *Williams v. Mohawk Indus.*, 568 F.3d

1350, 1356 (11th Cir. 2009). It is settled that "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart*, 564 U.S. at 359 (citations omitted). The common issue "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

To satisfy this requirement, Plaintiff identifies five purportedly common questions, which the Court will examine to determine whether commonality is met. The parties dispute whether these questions are indeed common. The inquiry is whether answering the question for Echevarria's case answers them for the other putative class members. In examining each question, the Court notes that there are twenty Iberostar hotels at issue.

(1) *Whether all privately owned real property in Cuba on which were built hotels operated by Iberostar (the "Trafficked Hotels"), was confiscated before March 12, 1996?*

Title III prescribes liability for trafficking "property which was confiscated by the Cuban Government on or after January 1, 1959." 22 U.S.C. § 6082(a)(1)(A). It also provides that "actions may be brought. . . with respect to property confiscated *before, on, or* after March 12, 1996." 22 U.S.C. § 6082(4)(A). It also adds that "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(4)(B).[4] Both sides agree that the particular dates of the confiscations of the twenty properties are in dispute, but Plaintiff argues that the particular dates do not matter because there is no dispute that the confiscation occurred after January 1, 1959.

Defendants use the Echevarria claim as an example as to why this question is not common. Their Cuban law expert, for example, opines that the Cayo Coco property was not

---

[4] The statute does not provide a remedy to a U.S. national who acquires ownership of a claim after the property is confiscated, if that property was confiscated on or after March 12, 1996. 22 U.S.C. § 6082(4)(C).

confiscated at all. *See J.A. Diaz Report*, Exh. J to Response to Motion to Class Certification. He claims that Cayo Coco may have been public property even before 1959. He asserts that there is significant authority to support the proposition that even before Castro took power, the Cuban government did not permit private ownership of keys like Cayo Coco. *Id.* at 19. Similarly the expert adds that pre-revolutionary Cuba also owned all property in the maritime terrestrial zone. *Id.* at 17-19. Contrary to this, Plaintiff produced a document that suggests the Cuban government acquired possession of Cayo Coco in 1993. In examining this example, let alone, the other twenty hotels, the Court finds that the Plaintiffs would need to provide individualized proof as to whether each of the twenty properties for which putative class members have claims was confiscated by the Cuban government. These individualized issues undermine commonality. *See Amalrelis v. Notter Sch. of Culinary Arts, LLC*, No. 6: 13-CV-54-ORL-31KRS, 2013 WL 5798573, at *5 (M.D. Fla. Oct. 28, 2013) ("the need for such individualized proof also undermines a finding of commonality.").

    *(2) Whether Defendants benefitted from the commercial use of the Trafficked Hotels?*

The parties again dispute whether this is a common question. Defendants first assert that they did not offer reservations at *every* Iberostar hotel in Cuba. For those Iberostar Hotels where the Expedia Defendants offered reservations, the timing and extent of the offerings were hotel-specific. Defendants also assert that the scope of the benefit was also different. Plaintiff asserts that the scope or extent of how much the Defendants benefitted is immaterial. He argues that Defendants' liability could arise from selling a single reservation at each Trafficked Iberostar Hotel. Here, however, Defendants assert that they did not offer reservations at every Iberostar hotel. Even if the scope of the benefit at each hotel is immaterial, as Plaintiff contends, there would be individualized proof as to each of the twenty hotels to determine whether the Expedia

Defendants offered reservations at all of them and benefitted from their commercial use. Again, this question would require individual proof as to each hotel to show the Expedia Defendants benefitted from each and in the event, there are some hotels where no reservations were offered, the question would not be a common question. Put simply, after gathering proof as to each of the twenty hotels, it is a possible result that the Expedia Defendants benefitted from some but not all of these properties. This does not seem the type of common answer that is apt to drive resolution of the claim.

*(3) Whether Defendants' trafficking was knowing and intentional?*

The scienter element of the cause of action provides that a "person 'traffics' in confiscated property if that person knowingly and intentionally . . . engages in a commercial activity using or otherwise benefitting from confiscated property . . . without the authorization of any United States national who owns a claim to the property." 22 U.S.C. § 6023(13)(A)(ii). The parties dispute what this provision means. Defendants contend it requires them to have knowledge that a U.S. national owned a claim to the property. Plaintiffs' position is that it only requires that they have knowledge that they are benefitting from confiscated property without any authorization from a U.S. national having a claim to the property. Here, because Defendants had no authorization from a U.S. national, the intentional trafficking of confiscated property is a violation of the act in Plaintiff's view. The parties also disagree as to what scienter requires – Plaintiff poses a general position that because the President signed Helms Burton into law that puts Defendants on notice that they would be subject to liability. Echevarria's argument is based on common knowledge of the Castro regime's widespread confiscation of privately-owned real property. Plaintiff asks the Court take judicial notice of this fact to meet the scienter requirement and relies on the deposition testimony of the Defendants' corporate representative, who agreed

that knowledge of Helms Burton Title III was widespread and that the Defendants never obtained an authorization from any U.S. national claimant.

In this case, Plaintiff alleges that he provided pre-suit notice to the Defendants, who continued to traffic the Cayo Coco property after receiving notice. That is one way to prove scienter, though for this analysis, the Plaintiff argues it is not necessary to provide pre-suit notice. Although the statute does not require pre-suit notice, Plaintiff's "common knowledge" argument does not seem like enough to prove scienter. At the time the statute was passed, it was common knowledge that the Castro regime had confiscated many properties. Still, the statute included specific language that the defendant must knowingly and intentionally benefit from the confiscated property. If "common knowledge" were enough to prove this, then there would be no need to include the knowing and intentional language in the statute. So, Plaintiff would have to show something more than common knowledge to meet the statute's requirements and this could also lead to individualized proof to determine what Defendants knew about the status of each Iberostar hotel and whether it was confiscated or not. For some, it may be easily satisfied with the pre-suit notice letter, but for others there may be something less than the letter, but more than common knowledge. The Court recognizes that knowledge may be easily satisfied for each Defendant with each property and requiring individual proof may not even be a time-consuming task, but it is not a common issue. In so holding, the Court notes that it agrees that the reading of the statute only requires that Defendants knowingly and intentionally trafficked in the confiscated property and not that they knew that a U.S. national had a claim.

*(4) Whether Defendants obtained authorization from Plaintiff and Class Members to sell reservations at the Trafficked Hotels?*

The Expedia Defendants' corporate representative testified that the Defendants had not obtained any authorizations. A failure to obtain any authorization could aid in the determination

of scienter, but overall, it does not seem to be a central issue apt to drive resolution of the litigation. Even if this question could be answered the same for all the Iberostar properties, it is only one component of what Plaintiff must show for scienter. It does not seem enough to tip the balance in favor of commonality. *Brown*, 817 F.3d at 1238 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)) (stating that the common issue must be one that drives resolution of the litigation in one stroke).

   *(5) Whether Defendants compensated Plaintiff and the Class Members for Defendants' sale of reservations at the Trafficked Hotels?*

   This issue also does not appear central to resolution of the litigation on a classwide basis. Had Defendants provided compensation for sale of reservations of the Trafficked Hotels, there would be no impetus for this lawsuit.  Even if the answer to this is no, presumably they did not pay, that would not drive resolution of the issues in this case.

   *3.  Typicality*

   "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Jamba Juice*, 308 F.R.D. at 240 (quoting *Hanon v. Dataproducts Corp.*, 976 F.3d 497, 508 (9th Cir. 1992)). Again, here, the Plaintiff seeks an issues class focused on the five core liability issues.  Those liability issues stem from Defendants' conduct vis-à-vis twenty different properties. At oral argument, Plaintiff's counsel emphasized that the Defendants' conduct was the same as to the twenty properties. He argued that how the properties were trafficked is exactly the same.  Because there are twenty different properties, however, the Court finds it hard to fathom that the Defendants' acted in the same manner with respect to each property, indeed, they indicate that at some of the properties they did not even sell reservations.  Accordingly, the Court does not find the requisite

17

typicality required by the rule. In any event, even if the Court were to find that Echevarria's claims are typical of what other class members' suffered, it is not enough to warrant a partial class certification.

### 4. *Adequacy*

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The adequacy-of-representation requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug*, 350 F.3d at 1189.

Defendants argue there are substantial conflicts of interest between the named representative, Plaintiff's counsel, and the putative class members. Defendants cite an affidavit from class member Evelio Angulo, who was represented in a similar action by Plaintiff's counsel four years ago to support a conflict. Angulo was a named plaintiff in a different case, who was dropped from that case, and later obtained other counsel. Plaintiff's counsel, Andres Rivero, filed a declaration stating that Angulo waived all existing and potential conflicts. Moreover, if Angulo is represented by other counsel and seeks a fractional interest in the same property as Echevarria, Echevarria argues that also is not a conflict because they both seek to recover damages from the Defendants' trafficking of property. Their interests are not opposed.

The Court agrees with the Plaintiff that this does not appear to be a fundamental conflict. A minor conflict "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Valley Drug*, 350 F.3d at 1189. "A fundamental conflict exists where some party members claim to have been harmed by the

same conduct that benefitted other members of the class." *Id.* That is not the case here. The Court finds there is no conflict to warrant a finding of inadequacy.

Defendants next contend Mario Echevarria cannot adequately prosecute the action. He failed to provide an affidavit in support of his position. Echevarria, who is 89 years old, contends he has participated in the litigation for five years, which shows his commitment that he will adequately prosecute the case. The Court finds that Echevarria is adequate to serve as a named plaintiff, but his adequacy is insufficient to warrant a partial class certification where the other factors are not met.

### D. *Rule 23(b)(3) Requirements*

### 1. *Predominance*

Under Rule 23(c)(4), a district court may certify a class action "with respect to particular issues." Fed. R. Civ. P. 23(c)(4). The Eleventh Circuit has yet to provide clear guidance as to whether plaintiffs must meet the requirement before the Court can certify an issues class. *Ray v. Judicial Correction Servs., Inc.*, 333 F.R.D. 552, 580 (N.D. Ala. 2019). In the absence of that guidance, district courts in the Eleventh Circuit have concluded that "the proper interplay between Rules 23(b)(3) and 23(c)(4) is that a class action as a whole must satisfy the Rule 23(b)(3) predominance requirement. If, and only if, it does so, then Rule 23(c)(4) may apply as simply a housekeeping rule that allows courts to sever the common issues for a class trial." *Fisher v. Ciba Spec. Chemicals Corp.*, 238 F.R.D. 273, 316 (S.D. Ala. 2006).

Rule 23(b)(3) allows certification when the court finds that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Courts "have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement." *In re Takata Airbag Prod. Liab. Litig.*, No. 15-md-2599, 2023 WL 6274837, at *13 (S.D. Fla. Aug. 24, 2023) (quoting *City of St. Petersburg v. Total Containment Inc.*, 265 F.R.D. 630 (S.D. Fla. 2010)). To reiterate "[t]he cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirements, before Rule 23(c)(4) becomes available to sever common issues for class trial." *Id.*

At the outset, the Court finds that individual issues of ownership predominate over the common liability issues.  For example, when this Court granted in part the initial motion to dismiss, it dismissed two named plaintiffs finding that they did not inherit their interests in the property until after the statutory cut-off date. The Court would need to determine whether each class member inherited the property and when they inherited the property to determine whether each is entitled to proceed.  Certainly, this individual inquiry will predominate even in an issues class.

Moreover, one of the core liability issues that Plaintiff identifies is whether Defendants' trafficking was knowing and intentional.  That is a property specific determination. Court rulings, including from this Court, confirm that trafficking in confiscated property is an individualized inquiry.  In *Del Valle*, 2023 WL 5141699, at *4, the district court held that general knowledge of confiscated property in Cuba was not sufficient to state a claim under the Act.  In this case, the issue of scienter would have to be adjudicated as to the 20 separate Iberostar properties. That individualized inquiry would also predominate over the common issue.

Finally, Plaintiff concedes that damages would be individualized. A Rule 23(c)(4) issues class is appropriate only if resolution of particular common issues "would materially advance the

disposition of the litigation as a whole." *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 669 (M.D. Fla. 2001). But certification is improper if "noncommon issues are inextricably entangled with the common issues, or . . .the uncommon issues are too unwieldy or predominant to be handled adequately on a class action basis." *Id.* (quoting *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 395 (D. Kan. 1998)). Here, even if there are limited common questions on liability, there are individual issues that relate to standing of the putative class members, scienter, defenses, and damages that are predominant.

### 2. *Superiority*

"For particular issues to be certified using Rule 23(c)(4), the requirements of Rule 23(a) and (b) must be satisfied only with respect to those issues." *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 674 (D. Kan. 2013). After proving the Rule 23(a) requirements and that common issues predominate, Plaintiff must also show that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To determine the superiority requirement, a district court must consider: (1) the interests of the class members in controlling the prosecution of separate actions; (2) the extent and nature of the litigation already commenced by class members; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties in managing a class action. *Id.* Here, Echevarria is claiming over $10 million in damages, which is his 12.5% interest in the property on Cayo Coco. Given Echevarria's potential damages award and the potential for large damage figures for other class members, surely, this factor weighs in favor of separate actions. Moreover, there is some indication that at least one class member, Angulo, had an interest in pursuing a separate action. In addition, the other members of the Cantero family at one point had filed another action. This factor also weighs against a finding that a class action is superior.

21

Moreover, here the class action mechanism loses its efficiency where the individual issues of ownership, scienter, and damages outweigh the determination of whether the Defendants trafficked in confiscated property, especially where the Plaintiff is claiming that Defendants trafficked in 20 different properties. Even if the Court could separate out the core liability issue of whether the Defendants trafficked, it would still need to examine whether Defendants did so as to twenty different properties. Certainly, this would make management of a class action difficult to say the least, and probably unmanageable. Accordingly, the Court finds that the class action mechanism is not a superior method to adjudicate the potential class members' claims.

Because the Court finds the Rule 23 requirements are not met and a class action unworkable in this context, the Court need not decide whether the class action vehicle would violate the Defendants' Seventh Amendment right to a jury trial.

DONE AND ORDERED in Chambers at Miami, Florida, this ___15___ of July 2024.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record