UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Nos. 19-cv-22620-FAM
19-cv-22621-FAM

MARIO ECHEVARRÍA

v.

EXPEDIA GROUP, INC., HOTELS.COM
L.P., HOTELS.COM GP, ORBITZ, LLC,

    defendants.
_____/

**PLAINTIFF'S NOTICE OF AUTHORITY REGARDING ADMISSIBILITY OF FAMILY TESTIMONY AND ANCIENT DOCUMENTS**

Mario Echevarría respectfully submits this Notice of Authority in support of the admissibility of (1) testimony about reputation in community and family concerning the Cuevas Angulo family's longstanding ownership and use of property in Cayo Coco, Cuba, as well as their familial relationships and inheritance of that property, and (2) historical documents demonstrating ownership, use, and lease of the property.

The Court has already ruled in open court that some of these ownership ancient documents are admissible evidence in this case. In addition to this ruling, Echevarría provides below further authority in support of their admissibility under the Federal Rules of Evidence.

**I.      WITNESS TESTIMONY**[1]

    **A.      FRE 803(19): Reputation Concerning Personal or Family History**

Rule 803(19) allows for the admission of reputation evidence concerning a person's birth,

---

[1] Plaintiff intends to call the following witnesses who will testify as to ownership and confiscation of Cayo Coco: (1) Mario Echevarria; (2) Julio Echevarria; (3) Carmen Davis; (4) Consuelo Tuya; and (5) Maura Sanchez. The plaintiff may also call Esther Sanchez regarding these matters.

1

marriage, ancestry, or other personal or family history—including matters such as inheritance and long-held family understandings about property ownership. This rule acknowledges that in many cases, especially those involving historical or foreign property claims, formal documentation may not exist, and family reputation may be the most reliable or only available form of proof.

Echevarría's family member witnesses are expected to testify that it was widely known within the town where they lived, Punta Alegre, and among the Cuevas Angulo family members, that they owned the property in Cayo Coco and that this ownership passed down through generations. Multiple family members were raised with this knowledge, and the family treated the property as their own through wills, mortgages, property tax payments, payments on economic activity on the key, leasing activity, maintenance, and legal correspondence—facts that are consistent with a longstanding reputation of ownership and inheritance.

Such testimony falls squarely within Rule 803(19)'s framework. As courts have recognized, reputation within a family, community among or close associates can be an especially trustworthy form of evidence in cases involving personal or family history. *See United States v. Jean-Baptiste*, 166 F.3d 102, 110–11 (2d Cir. 1999) (affirming admission of family reputation concerning ancestry); *Estate of Murdoch v. Comm'r*, 856 F.2d 139 (4th Cir. 1988) (upholding **reputation evidence concerning property inheritance**)(emphasis added); *Lennon v. Alabama Telecasters, Inc.*, 2021 WL 1554892, at *4 (M.D. Ala. Apr. 20, 2021) ("Plaintiff could testify at trial about what his family told him about his family's ancestry or history" under Rule 803(19)).

This rule is especially appropriate here, where the witnesses are speaking to facts passed down through generations, grounded in the family's conduct and reinforced by historical

documents. Their testimony is both relevant and reliable and should be admitted under Rule 803(19).

>    B.   **FRE 803(20): Reputation Concerning Land Boundaries and Customs or General History**

Rule 803(20) provides a hearsay exception for evidence of a community's reputation regarding the customs about and boundaries of land in the community or events of general historical importance. The rule acknowledges that in many instances—particularly in rural or foreign settings—community memory and consensus may be the only surviving evidence of historical property boundaries and usage.

In this case, witnesses will testify that it was widely accepted in the communities of Morón and Punta Alegre that the Cuevas Angulo family owned Cayo Coco and had leased portions of the land to the Sanchez family, among other tenants. This reputation was well-established long before the present litigation and is based on decades of consistent understanding within the local population. The witnesses' testimony will reflect the community's long-standing belief that the Cuevas Angulo family owned and controlled the land, and that they paid taxes and engaged in leasing and managing the property.

The use of reputation evidence to establish land boundaries and customs, including community understandings of ownership is deeply rooted in American jurisprudence and expressly permitted under Rule 803(20) of the Federal Rules of Evidence. The Supreme Court recognized as early as *Boardman v. Reed & Ford's Lessees*, 31 U.S. (6 Pet.) 328, 343–44 (1832), that reputation in the neighborhood regarding the location of boundaries was admissible hearsay, particularly when monuments or physical evidence were lost or perishable. This principle remains vital today, especially in cases involving historical land claims. In *Pueblo of Jemez v. United States*, 366 F. Supp. 3d 1234, 1270–71 (D.N.M. 2018), the court expressly applied Rule

803(20) to admit oral history and reputation testimony concerning land use and ownership passed down through generations of community members. Together, these cases support the conclusion that longstanding community beliefs about land ownership—such as the understanding in Morón and Punta Alegre that the Cuevas Angulo family owned, leased portions of, and paid taxes on Cayo Coco—are admissible under Rule 803(20) as both historically accepted and contemporarily authorized forms of evidence.

The testimony here will demonstrate that the Cuevas Angulo family's ownership was a matter of recognized community history, passed through generations of residents in Morón and Punta Alegre. This type of historical and boundary-related reputation evidence is precisely what Rule 803(20) was designed to preserve and present to the jury.

### C. Lay Testimony Regarding the Cuevas Angulo Family History Is Admissible

Defendants argue that the testimony of Mario Echevarría and his family members concerning the Cuevas Angulo family's ownership and inheritance of Cayo Coco should be excluded as hearsay or constituting improper opinion testimony. These objections are unfounded.

To begin with, testimony concerning family lineage, inheritance, and shared understandings about property rights falls squarely within established hearsay exceptions. Federal Rule of Evidence 803(19) explicitly permits reputation evidence concerning personal or family history, and Rule 804(b)(4) allows statements regarding family relationships made by now-unavailable declarants. The family's testimony that the Cuevas Angulo family owned and managed the property over generations is exactly the type of evidence contemplated by these provisions. *See United States v. Jean-Baptiste*, 166 F.3d 102, 110–11 (2d Cir. 1999).

Moreover, much of the testimony at issue is not hearsay at all. It is offered not to prove legal title to the land, but rather to show the basis for Echevarría's belief in his inheritance, to

4

explain the family's conduct over time, and to counter defendants' narrative that the ownership claim arose without foundation. Courts have consistently held that such evidence is admissible when introduced to establish knowledge, notice, credibility, or state of mind. *See United States v. Coen*, 631 F.2d 1223, 1225 (5th Cir. 1980).

In addition, this testimony is well within the scope of permissible lay opinion under Rule 701. Witnesses will describe their own experiences and perceptions—what they heard growing up in the community from the neighbors and family members and how the family treated the property—none of which are legal conclusions. This type of narrative, based on firsthand experience, is routinely admitted in cases. *See United States v. McFarland*, 2007 WL 4142782, at *3–4 (11th Cir. 2007).

Finally, testimony that reflects intergenerational knowledge passed through the family or understood within the community is directly contemplated by Rules 803(19), 803(20), and 804(b)(4). Excluding that kind of evidence would unjustifiably bar claimants in historical or foreign property disputes from presenting their case—a result neither the Rules of Evidence nor the Helms-Burton Act endorses.

## II.     ADMISSIBILITY OF OWNERSHIP DOCUMENTS[2]

The Court has already ruled in open court that the ownership documents at issue in this case are admissible under Federal Rule of Evidence 807, the residual hearsay exception. This section briefly outlines the evidentiary bases under the Federal Rules that support and are consistent with the Court's prior ruling.

---

[2] The documents are broken down by witnesses as follows: M. Echevarría Documents: PLA0001, PLA0004, PLA0055, PLA0057, PLA0066; J. Echevarría Documents: previously listed M. Echevarría Documents, PLA0010, PLA0011, PLA0012, PLA0013, PLA0068, PLA1088, PLA1089, PLA1090; M. Sanchez Documents: PLA1017, PLA1096.

A.      **Rule 803(16) – Ancient Documents**

Federal Rule of Evidence 803(16) excludes from the hearsay bar "[a] statement in a document that was prepared before January 1, 1998, and whose authenticity is established." The documents at issue were created between 1911 and 1995—clearly satisfying the rule's temporal requirement. Though defendants have been offered the originals for a long time, they have never sought to inspect or test the documents, and they have presented no challenge to their authenticity. Julio Echeverria and Consuelo Tuya will offer testimony that these documents have been maintained by the family over decades despite severe challenges presented by the Cuban Revolution.

B.      **Rule 803(15) – Statements in Documents Affecting Property Interests**

Rule 803(15) permits the admission of statements "contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose."  All the ancient documents pertain to the ownership, lease, or use of the Cayo Coco property and were created in the ordinary course of the family's management of the land.

C.      **Rule 807 – Residual Exception**

Even if not covered under Rules 803(15) or (16), the documents are admissible under Rule 807. They are highly probative, supported by circumstantial guarantees of trustworthiness (e.g., drafted by attorneys and notaries, preserved in family records, never challenged for authenticity), and more probative than any other evidence Echevarría can reasonably obtain given the Cuban government's legal prohibitions on accessing supporting documentation for Helms-Burton claims.

Courts must look to "many factors" when evaluating whether the trustworthiness prong is met, including, the "probable motivation of the declarant in making the statement, the

6

circumstances under which the statement was made, the knowledge and qualifications of the declarant, and the existence of corroborating evidence." *Bratt v. Genovese*, 782 F. App'x 959, 965 (11th Cir. 2019). All materials sought to be admitted contain sufficient guarantees of trustworthiness under the totality of the circumstances. The letters, leases, mortgages, partition, tax records, and supporting testimony—bear strong indicia of reliability. The statements were made by attorneys, estate representatives, and public officials in the course of ordinary legal and administrative conduct, and not in anticipation of litigation. They were preserved over decades by family members with no incentive to fabricate their content. In addition, the key factual assertions in these documents are corroborated by consistent family testimony, the community's historical understanding, and the absence of any contradictory evidence from defendants. Taken together, these considerations provide ample support for the conclusion that the proffered materials satisfy Rule 807's trustworthiness requirement.

Defendants have long had access to these documents and examined several witnesses about them. Echevarría has also satisfied the notice requirement of Rule 807(b). *Fed. Trade Comm'n v. On Point Global LLC*, 2021 WL 4891334, at *4 (S.D. Fla. Sept. 23, 2021) (Notice is satisfied where the adverse party has notice of a document's existence and the proponent's intention to introduce it.).

### D. Authentication of Ancient Documents

Some of the documents are authenticated under Rule 901(b)(7) as they were recorded or filed in a public office or registry. *See* Fed. R. Evid. 901(b)(7). Rule 901(b)(7), states that a document may be authenticated if there is "[e]vidence that: (A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the officer where items of this kind are kept." Many of these documents were obtained or recorded

in public offices in Morón and relate to the size of Cayo Coco, the nature of the land, the family's leasing of the land, and the taxes paid.

Authentication is also proper under Federal Rule of Evidence 902(3). Under Rule 902(3), foreign public documents may be self-authenticating if the "document that purports to be signed or attested by a person who is authorized by a foreign country's law to do so," and is accompanied by a final certification. Some of these documents bear the official stamp of the government in Morón. This is enough to authenticate them. *See United States v. Koziy*, 728 F.2d 1314, 1322 (11th Cir. 1984) (Documents were self-authenticating under Rule 902(3) when a government official authorized to authenticate properly authenticated those documents). But even if the Court determines that this does not constitute the final certification required under Rule 902(3), "[T]he court may, for good cause, either: (A) order that it be treated as presumptively authentic without final certification; or (B) allow it to be evidenced by an attested summary with or without final certification." Here, it is impossible for Echevarría to seek official assistance to authenticate these documents in Cuba. In Cuba, it is a criminal act to seek, supply, request, receive, accept, or facilitate information that would favor the application of the Act. A. Gonzalez Expert Report at 23-24 (ECF No. 166-23, 22621). As such, Echevarría, and anyone who assists him, would be subject to prosecution in Cuba and risk imprisonment of up to 20 years in attempting to obtain further authentication. *Id.* at 24-25. Therefore, good cause exists to treat these documents as presumptively authentic.

Authentication of these documents is also proper under Rule 901(b)(8) as they are: (1) more than 20 years old, (2) in excellent condition, and (3) were preserved by the family in a place and manner consistent with authenticity. Defendants have never questioned their authenticity or sought to test the documents to challenge them. *See* Fed. R. Evid. 901(b)(8).

8

In addition, some of the documents qualify as self-authenticating foreign public records under Rule 902(3). *See* Fed. R. Evid. 902(3). These include official correspondence from legal professionals and institutions in Cuba that bear the indicia of government authority or legal formality. Moreover, notarized documents are self-authenticating under Rule 902(8). Fed. R. Evid. 902(8) ("Acknowledged Documents. A document accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments."); *Ohio Cas. Ins. Co. v. Beall*, 2024 WL 3993851, at *6 (M.D. Ga. Aug. 29, 2024) (finding that document that is "accompanied by a certificate of acknowledgement that is lawfully executed by a notary public" is an "acknowledge document" and therefore, self-authenticating).

Because these documents are accompanied by sufficient certification, they do not require extrinsic evidence of authenticity to be admitted. Their form and provenance satisfy the requirements for self-authentication under the Federal Rules.

## CONCLUSION

The testimony of Echevarría's witnesses regarding the family's ownership and inheritance of Cayo Coco, the community's understanding of that ownership, and the historical documents that support those claims are all admissible under well-established rules of evidence. The Court should permit the jury to hear this critical evidence.

Dated:  April 7, 2025                                                                 Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: amalave@riveromestre.com
E-mail: strujillo@riveromestre.com

By:   /s/ *Andrés Rivero*
ANDRÉS RIVERO
Florida Bar No. 613819
ANA C. MALAVE
Florida Bar No. 83839
SYLMARIE TRUJILLO
Florida Bar No. 112768

## CERTIFICATE OF SERVICE

I certify that on April 7, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being electronically served today on all counsel of record through CM/ECF.

 /s/ *Andrés Rivero*
ANDRÉS RIVERO